Cheryl L. O'Connor
Nevada Bar No. 14745
coconnor@jonesday.com
Ryan D. Ball
*Admitted Pro Hac Vice*
rball@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612.4408
Telephone:     (949) 851-3939
Facsimile:      (949) 553-7539

Jennifer L. Braster
Nevada Bar No. 9982
NAYLOR & BRASTER
1050 Indigo Drive, Suite 200
Las Vegas, NV  89145
Telephone:     (702) 420-7000
Facsimile:      (702) 420-7001
jbraster@naylorandbrasterlaw.com

Attorneys for Defendant
Experian Information Solutions, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DAVID LEONI,<br><br>                    Plaintiff,<br><br>          v.<br><br>EXPERIAN INFORMATION SOLUTIONS,<br>INC. and MILITARY STAR,<br><br>                    Defendants. | Case No. 2:17-cv-01408-RFB-VCF<br><br>**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S OPPOSITION TO PLAINTIFF'S APPEAL/OBJECTIONS TO THE COURT'S OCTOBER 9, 2018 ORDER DENYING PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR RECONSIDERATION [ECF DKT. 49, 53, 87, 88]** |

Defendant Experian Information Solutions, Inc. ("Experian"), by and through its counsel of record, hereby files its Opposition to Plaintiff David Leoni's Appeal/Objections to the Court's October 9, 2018 Order Denying Plaintiff's Motion to Compel and Motion for Reconsideration [ECF Dkt. 49, 53, 87, 88] ("Motion"). This Opposition is supported by the following Memorandum of Points and Authorities, all prior submissions regarding Plaintiff's Motion to Compel and Motion for Reconsideration, the pleadings and other filings in this matter, and any oral argument.

**INTRODUCTION**

This Motion arises out of Plaintiff's fifth request to extend the discovery deadline, his subsequent motion to compel Experian to identify individual members of his putative class, and the parties' supplemental submissions.  After holding four hearings, and bending "over backwards" for Plaintiff, Magistrate Judge Cam Ferenbach ultimately found that Plaintiff had failed to diligently prosecute this case and that Experian's systems could not identify Plaintiff's putative class members without incurring an undue burden.  As a result, Judge Ferenbach denied Plaintiff's request to further extend class discovery, as well as Plaintiff's motion to compel. As Judge Ferenbach recognized, Experian's systems do not have the ability to ascertain Plaintiff's class in an automated manner, and manually reviewing Experian's files to identify Plaintiff's class would be unduly burdensome.  Though he has been given every opportunity, Plaintiff has not presented any reliable evidence to the contrary.

Nothing in Plaintiff's Motion demonstrates that Judge Ferenbach erred in reaching his conclusions after entertaining extensive briefing, supplementation, a previously undisclosed "expert," and multiple hearings.  Instead, Plaintiff simply recycles the same failed contentions he made below:  (1) that his purported expert presented a reliable search methodology (which was never proposed during discovery and, in any event, is based on a flawed understanding of Experian's systems); (2) that other alternatives existed to identify class members (which also were not raised during discovery and are based on inaccurate assumptions); (3) that Experian's corporate representative, Kimberly Cave, was not qualified to be computer expert (even though Experian has never designated Ms. Cave as a computer expert); and (4) that Judge Ferenbach should have granted Plaintiff's request to extend discovery (even though Plaintiff failed to diligently pursue class discovery for nearly a year).

In a last ditch effort to save his Motion, Plaintiff points to a declaration submitted in a related case, claiming that Ms. Cave's testimony is somehow contradictory.  But, as with his previous contentions, this too is patently false.  Ms. Cave has clearly and consistently testified about Experian's system capabilities across Experian's cases.  Plaintiff's unfounded attempts to impugn Ms. Cave's credibility should not be countenanced be the Court, and his Motion must be denied.

## BACKGROUND

### I. Plaintiff's Individual Claims

This action concerns Plaintiff's dispute of certain account information reported on his Consumer Disclosure following the discharge of his bankruptcy in August 2016. (*See* ECF No. 1.) Plaintiff first requested a copy of the information contained in his credit file—which is referred to as a "Consumer Disclosure Initial" or "CDI"—on August 31, 2016. (*Id.*) On October 20, 2016, he disputed the accuracy of three of his accounts (or "tradelines") as they were displayed on his CDI. With respect to his Military Star tradeline—the subject of this action—Plaintiff disputed the status of his account and the balance listed on the tradeline. (*Id.*) Following the receipt of Plaintiff's dispute, Experian conducted a full reinvestigation and updated Plaintiff's Military Star tradeline consistent with the information it received from the furnisher. Experian provided Plaintiff a written summary of the reinvestigation results—which is referred to as a "Consumer Disclosure Final" or "CDF" (together with CDIs, "Consumer Disclosures")—on November 24, 2016. (*See* ECF No. 49-20.)

Although the account status of the Military Star tradeline was properly updated, the "Account History" section of Plaintiff's CDF incorrectly stated: "Debt included in Chapter 13 Bankruptcy on November 8, 2016." (*Id.* at 7.) When Plaintiff received the results of his reinvestigation and noticed this inaccurate date, he could have availed himself of a number of remedial steps listed in the CDF to rectify the issue. Instead, Plaintiff commenced this action on May 18, 2017, alleging that Experian violated Sections 1681e(b), 1681i, and 1681(g) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1581 *et seq.*, by reporting the incorrect "included in bankruptcy" date. (ECF No. 1.)

Experian answered the Complaint on June 12, 2017, and, between June 23, 2017 and September 27, 2017, the parties engaged in written discovery concerning Plaintiff's individual claim. (*See* ECF Nos. 4, 19.)

### II. Plaintiff's Class Claims

Shortly after receiving Experian's first set of discovery responses, on September 5, 2017, Plaintiff moved for leave to file his First Amended Complaint, which Experian did not oppose.

1    (ECF Nos. 14-15.)  As a result, on September 28, 2017, the Court so-ordered Plaintiff's motion,
2    and Plaintiff filed his Amended Complaint that same day.  (*See* ECF Nos. 16-17.)  The Amended
3    Complaint asserts a putative class action, under Sections 1681e(b) and 1681g of the FCRA, on
4    behalf of all consumers in the United States who, between September 2015 and September 2017,
5    obtained an Experian credit report stating that at least one tradeline had been "included" in that
6    person's Chapter 7 or Chapter 13 bankruptcy after the date the person had obtained a bankruptcy
7    discharge, where the person (i) previously filed a Chapter 7 or Chapter 13 bankruptcy, (ii) included
8    an account in their bankruptcy petition, and (iii) that account was discharged in bankruptcy.  (ECF
9    No. 17 at 11.)

10   **III.   Discovery**

11           After Plaintiff filed his Amended Complaint, Experian agreed to a 60-day extension of
12   discovery to allow Plaintiff to seek information that he claimed was necessary to retain an expert.
13   (*See* ECF No. 19 at 3.)  Thereafter, on October 11, 2017, Plaintiff propounded his second set of
14   interrogatories, and, on October 22, 2017, he propounded his third set of requests for admissions.
15   (*See* ECF Nos. 49-3, 49-4.)  This discovery—*i.e.*, the Disputed Discovery—seeks to ascertain the
16   total number of Consumer Disclosures that Experian generated between September 7, 2015 and
17   September 7, 2017, that fit all the elements of Plaintiff's putative class definition, described above.
18   (*See* ECF Nos. 49-3, 49-4.)

19           On October 27, 2017, Plaintiff conducted a full, 7-hour 30(b)(6) deposition, questioning
20   Experian's corporate representative on highly technical issues regarding Experian's internal coding
21   and databases. (ECF No. 26 at 4-5.)  Following the deposition, Plaintiff's counsel requested
22   information concerning Experian's internal documents.  (*Id.*)  Although Experian believed much
23   of this discovery was unnecessary and irrelevant, it nevertheless engaged in good faith efforts to
24   accommodate Plaintiff's requests.  (*Id.*)  For example, as Plaintiff has recognized, Experian agreed
25   to produce versions of its "Admin Handbook," its "Long Admin," and its "File One Appendix."
26   (*Id.*)  Unsatisfied, Plaintiff propounded additional written discovery on December 2, 2017, seeking
27   further information regarding Experian's internal databases.  (*Id.*) As a result of Plaintiff's
28   voluminous requests, Experian agreed to a third extension of discovery on December 4, 2017.  (*Id.*)

On December 22, 2017, Experian objected to the Disputed Discovery as unduly burdensome and disproportionate to needs of the case.  (*See* ECF No. 49-3, 49-4.)  Experian's responses explained that, while Experian could identify the number of Consumer Disclosures currently reporting a Chapter 7 or Chapter 13 bankruptcy, it could not determine the remaining information without conducting a manual review of each Disclosure.  Specifically, Experian explained that a manual review would be required to determine (i) whether each Disclosure stated that a Chapter 7 or Chapter 13 bankruptcy had been discharged, and (ii) whether the Account History section of at least one tradeline included a bankruptcy date that fell after the Date Resolved on that consumer's public record entry for the bankruptcy.  (*Id.*)

Undeterred, on December 27, 2017, Plaintiff sent Experian a Rule 26-7 Letter, seeking to meet and confer regarding the propriety of Experian's responses (the "December 2017 Letter").  On January 3, 2018, the parties agreed to a fourth extension of discovery in light of Plaintiff's extensive discovery requests.  (*See* ECF No. 30 at 4-5.)  Thereafter, the parties had several exchanges concerning the propriety of Experian's responses and its technical capabilities during January and February of 2018.  (ECF No. 40-1, ¶ 12.)  During those communications, Experian reiterated that its systems could not identify Plaintiff's putative class members in an automated manner, and that it could not produce the Disputed Discovery without conducting a manual review of tens of thousands of documents, which would be unduly burdensome and disproportionate to the needs of this case.  (*Id.*)  While Plaintiff claimed that he was "not convinced" that a manual search was needed, and suggested the parties employ a special master to investigate Experian's systems, Plaintiff did not follow up on his request.  (*Id.*)  Nor did he move to compel further responses.  (*Id.*)

Instead, on February 13, 2018, Plaintiff propounded additional requests for production, seeking far-reaching and harassing "technical" discovery in an apparent attempt to challenge the veracity of Experian's representations.  (*See* ECF No. 49-10.)  And just four minutes after receiving Experian's responses on March 15, 2018, Plaintiff requested a meet and confer. (ECF No. 49-11.)  Yet, despite Experian's request for a 26-7 letter, Plaintiff never followed up, seemingly abandoning this discovery.  Indeed, on April 12, 2018, Plaintiff affirmatively represented to this Court—in the interim status report Plaintiff first drafted—that "[t]here are currently ***no discovery disputes***

*between the parties*." (ECF No. 33 at 2.)  Plaintiff also proposed trial dates for either the week of October 15, 2018 or October 22, 2018.  (*Id.* at 2:8-9.)  Although discovery was on track to conclude following the depositions of the parties' respective experts—which the parties agreed to schedule in June 2018—Plaintiff suddenly reversed course when he unexpectedly sent Experian an eight-page, single-spaced Rule 26-7 letter on May 20, 2018 (the "May 2018 Letter").[1]

The May 2018 Letter sought to revive the issues raised in the December 2017 Letter regarding the Disputed Discovery, and it raised—for the first time—Experian's responses to Plaintiff's December 2, 2017 and February 13, 2018 discovery requests.  (*See* ECF. No. 35-3.) It also raised—for the first time—both the prospect of re-deposing a corporate representative regarding Experian's responses to class discovery, as well as the production of a privilege log.  (*Id.*; ECF No. 40-1, ¶ 13.)

After receiving Plaintiff's voluminous May 2018 Letter, Experian notified him that it would not agree to yet another extension and, on June 1, 2018, Experian formally responded to the May 2018 Letter, explaining that Plaintiff had been dilatory throughout discovery and demanding an explanation for Plaintiff's contradictory representation to the Court.  (ECF Nos. 40-2, 40-3.)  The parties met and conferred regarding the May 2018 Letter on June 4 and 5, during which Plaintiff refused to explain his delay in raising the issues outlined in the May 2018 Letter, or justify his sudden change in position after representing to the Court in April—after Experian had provided its responses—that "[t]here are currently no discovery disputes between the parties. " (ECF No. 33 at 2:1.)   While Plaintiff suggested that his lack of diligence in this case was excusable because discovery was somehow coordinated with other cases Plaintiff's counsel is pursuing against Experian in this District, discovery in this case has never been coordinated with any other cases. Indeed, when Experian attempted to consolidate the discovery on Plaintiff's counsel's other cases, Plaintiff's counsel resisted consolidation, and Judge Nancy J. Koppe expressly denied Experian's request.  *See Ashcraft v. Experian Info. Sols.*, No. 2:16-cv-02978-JAD-NJK, ECF No. 23 (D. Nev.);

---

[1] That same Sunday night, at approximately 10:00 p.m., Plaintiff's counsel emailed to Experian's counsel similarly lengthy meet-and-confer letters with numerous attachments that amounted to over 250 pages in several other cases.  Plaintiff then unilaterally scheduled meet-and-confer conference calls for two days later, and demanded that Experian's counsel be prepared "to discuss each and every issue outlined" in the May 20 Letter.

1  *see also Dunlap v. Wells Fargo Fin.*, No. 2:17-cv-00097-RFB-JAL, ECF No. 22 (D. Nev.) (denying

2  related motion for consolidation and citing Judge Koppe's decision).

### IV.   Plaintiff's Motion to Extend Discovery

4         On May 29, 2018, less than two weeks before discovery was scheduled to conclude,

5  Plaintiff moved to extend discovery—**for a fifth time**—by another 90 days to, among other things,

6  depose Experian's "technical expert" and take a second Rule 30(b)(6) deposition on "Class-related

7  issues." (*See* ECF No. 35 at 7.)  Experian, however, objected to any further discovery, as Plaintiff

8  had waited until the eve of the discovery deadline to raise any of these issues and had otherwise

9  been dilatory throughout the discovery period.  Indeed, Experian never designated a "technical

10 expert," and certainly never agreed to the deposition of any such expert.  In fact, Plaintiff never

11 even noticed any such deposition.  Nor did he notice a second deposition of Experian's corporate

12 representative, much less provide any basis for seeking a second deposition given that Plaintiff had

13 already conducted a full, 7-hour Rule 30(b)(6) deposition after amending his Complaint to include

14 class allegations.

15        Moreover, Plaintiff utterly failed to set forth any good cause to justify his eleventh-hour

16 request to effectively reopen discovery in this case.  Indeed, Plaintiff's sole basis for establishing

17 good cause was his alleged inability to "anticipate that Experian would refuse to even provide a

18 date for a Rule 26-7 conference in response to Plaintiff's" May 2018 Letter.  (ECF No. 35 at 8:21-

19 23.)  But, as Experian explained in its opposition, "[t]he good cause inquiry focuses primarily on

20 the movant's diligence," and exists only if the current deadlines "cannot reasonably be met despite

21 the diligence of the party seeking the extension."  (ECF No. 40 at 6, citing *Harden v. Nevada Dep't

22 of Corr.*, No. 2:14-cv-2008-JAD-VCF, 2016 WL 7155743, at \*2 (D. Nev. Dec. 6, 2016); *see also

23 McGowan v. Credit Mgmt. LP*, No. 2:14-cv-00759-APG-VCF, 2015 WL 5682736, at \*14-15 (D.

24 Nev. Sept. 24, 2015).)  Because Plaintiff could not justify his lack of diligence, he could not

25 establish the requisite good cause to warrant an extension and further delay resolution of this case.

26        On June 8, 2018, Judge Ferenbach heard argument on Plaintiff's motion, agreeing with

27 Experian and rejecting Plaintiff's request for any further discovery. As Judge Ferenbach

28 recognized, the burden was on Plaintiff to diligently pursue class discovery, and he "didn't do that."

1    (ECF No. 48 at 37:16-17.)  Instead, Plaintiff "sat on this" discovery, and waited until the "last

2    minute" to effectively reopen the discovery period to conduct class discovery.  (*Id.* at 28:17-18,

3    29:24-25.)  Accordingly, the Court denied Plaintiff's motion to extend the discovery deadline,

4    ordered Experian to supplement its discovery responses by June 11, instructed Plaintiff to file any

5    discovery motion on those responses by June 25, 2018, and scheduled the deadline to file

6    dispositive motions.  (*Id.* at 35:18-37:20; *see also* ECF No. 47.)

7    **V.**     **Plaintiff's Motion to Compel**

8            On June 11, 2018, Experian supplemented its responses to the Disputed Discovery to

9    include the total number of consumers who currently report either a Chapter 7 or Chapter 13

10   bankruptcy, and who requested a Consumer Disclosure during the relevant time period.  (ECF No.

11   49-3, 49-4.)  Consistent with its prior responses, however, Experian explained that, absent a manual

12   review, it could not ascertain whether those consumers reported a Chapter 7 or Chapter 13

13   bankruptcy during the relevant time period, or whether the Account History section of at least one

14   tradeline included a bankruptcy date that fell after the Date Resolved on that consumer's public

15   record entry for the bankruptcy.  (*Id.*)

16           Thereafter, on June 25, 2018, Plaintiff moved to compel Experian to identify his putative

17   class members by implementing a hypothetical if/then search methodology based on certain status

18   codes reflected on two internal Experian database reports: (1) an Admin Report, which is generated

19   by Experian's File One database; and (2) a Disclosure Log, which is generated by Experian's CAPS

20   database.  (*See* ECF No. 49.)  Plaintiff's proposed search was memorialized in two flowcharts.  (*See*

21   ECF No. 49-23.)  The flowcharts first began by aggregating all Consumer Disclosures generated

22   during the relevant time period—*i.e.*, CDI + CDF + Relevant Time Period.  (*Id.*) Plaintiff then

23   attempted to narrow the number of relevant Consumer Disclosures by comparing certain status

24   codes reflected on the Admin Report to determine whether the "Date Resolved" field in the public

25   records section of a Consumer Disclosure postdated the bankruptcy date listed under the "Account

26   History" section of a particular tradeline.

27           Specifically, Plaintiff proposed comparing the "▮▮▮▮" and "▮▮▮▮▮" fields listed under

28   the Public Records section of an Admin Report with the "▮▮▮▮▮▮" and "▮▮▮▮" fields listed

under each tradeline on the Admin Report.  (*Id.*) According to Plaintiff, if the ████ and ████ fields reflect either a Chapter 7 or Chapter 13 bankruptcy and the ████ postdates the ████ then that particular consumer is a potential member of the putative class.

As Experian explained, however, this search would not reliably or meaningfully identify class members because File One is a live database that is constantly updating tradeline information, including the ████ and ████ fields reflected on an Admin Report. (*See* ECF No. 54-1.) For example, if Plaintiff's proposed search were performed today, Plaintiff himself would not be captured in Plaintiff's proposed automated search (*i.e.*, middle column) because no tradeline on his Admin Report would reflect a bankruptcy (which would no longer be reported after a set statutory period).  (*See* ECF No. 66 at ¶ 12.)  Nevertheless, Plaintiff suggested that some undefined Optical Character Recognition ("OCR") process could be implemented to allow for a "semi-manual" review to identify consumers who are members of the putative class.

On August 1, 2018, Judge Ferenbach heard oral argument on Plaintiff's motion.  (*See* ECF No. 65.)  Although Plaintiff acknowledged that he himself would be not be captured in the automated search, he nevertheless claimed that his search would be effective because it would identify at least some of the putative class members in an automated manner—*i.e.*, those consumers who still have a tradeline reflecting a bankruptcy.  (*See id.* at 35:9-11.)  But, as Experian explained, even if a consumer's tradeline currently reflects a bankruptcy, Experian has no way of determining whether that tradeline was reporting a bankruptcy at the time the consumer received their Consumer Disclosure.  Again, File One is a live database.

Undeterred, Plaintiff claimed that his flowcharts accounted for the dynamic nature of File One by comparing the ████████████████████ fields under each tradeline on an Admin Report with the "GEN DATE," which Plaintiff defined as "the date a [Consumer] Disclosure was generated" (ECF No. 49-2 at ¶ 31; *see also* ECF No. 65, Tr. at 38:25-41:1.)  According to Plaintiff, if the ████ and ████ are less than the GEN DATE—*i.e.*, if there has been no update to the relevant tradeline since the time the consumer received their Consumer Disclosure—then it can be inferred that the information reflected on the Admin Report was also reflected on the Consumer Disclosure.  (*Id.*)

As Plaintiff's counsel admitted during the hearing, however, the GEN DATE is not a field within File One or a term used by Experian, but is instead "a word [Plaintiff's counsel] cooked up." (ECF No. 65, Tr. at 22:3-4.)  Moreover, Plaintiff derived the GEN DATE from the Disclosure Log, which is an output report generated by CAPS, not File One.  But, as Plaintiff acknowledged during the hearing, Plaintiff's search is primarily based on information stored in File One, not CAPS. (*Id.* at 50:9-12.)  While Plaintiff claimed that "the information in the CAPS system is derived from File One," he offered no support, other than his own conjecture, that Experian could compare the information stored in CAPS with the raw data stored in File One. (*Id.* at 51:3-12.)

Nevertheless, because Experian did not specifically address whether it could compare the GEN DATE with the ████ and ████ fields, Judge Ferenbach ordered Experian to submit a supplemental affidavit further addressing Plaintiff's flowcharts.  (*Id.* at 59:9-19.)  Judge Ferenbach also offered Plaintiff another opportunity to retain an expert, which Plaintiff had not done during discovery, and to submit "a counter affidavit."  (*Id.* at 59:20-21, 60:15-17.)  Judge Ferenbach made clear, however, that he did not "need [additional] argument" from the parties.  (*Id.* at 59:18.)  Judge Ferenbach ordered Experian to submit its supplemental affidavit by August 22, 2018, Plaintiff to submit his counter affidavit by September 12, 2018, and Experian to file a reply, if any, by September 24, 2018.  (*Id.* at 62:13-21.)

## VI.     Supplemental Submissions on Plaintiff's Motion to Compel

### A.     Experian's Supplemental Declaration

On August 22, 2018, Experian submitted the supplemental declaration of Kimberly Cave in further support of Ms. Cave's July 2, 2018 declaration.  (*See* ECF No. 66.)  In accordance with the Court's instruction, Ms. Cave's supplemental declaration specifically addressed whether Experian could cross-reference the GEN DATE (which is derived from a Disclosure Log generated by CAPS) with the ████ and ████ fields (which are reflected on an Admin Report generated by File One).  (*See id.* at ¶¶ 10, 13-16.)  ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6     ████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████  And, if Plaintiff's proposed search had been performed on July 12, 2017

17 (the date of his prior Admin Report), Plaintiff would have fallen under the left column because the

18 ██████ on his Military Star tradeline was later than the date his Consumer Disclosure was generated.

19 (*See id.*; ECF No. 49-16.) Thus, Plaintiff himself would not have been captured by his own search

20 methodology.

21                       **B.**     **Plaintiff's Request to Modify the Protective Order**

22       On August 23, 2018, the day after Experian submitted Ms. Cave's supplemental declaration,

23 Plaintiff's counsel contacted Experian's counsel in two other, entirely unrelated cases—*Mainor v.*

24 *Experian Information Solutions, Inc.*, No. 16-cv-183 (D. Nev) and *Cardinali v. Experian*

25 *Information Solutions, Inc.*, No. 16-cv-2046 (D. Nev.)—regarding the use of deposition testimony

26 from those cases in support of Plaintiff's response to Ms. Cave's supplemental declaration in this

27 case.  That same day, Plaintiff's counsel also contacted Experian's counsel in this case requesting

28 a modification to the Protective Order that would provide Plaintiff's un-retained expert with the

ability to potentially retain Experian's confidential documents in perpetuity.  Because Ms. Cave's testimony from *Mainor* was irrelevant to the issues in *Leoni*, and because Plaintiff had not articulated any basis to amend the protective order, Experian refused Plaintiff's requests.

Plaintiff claimed that he needed Ms. Cave's testimony from *Mainor* to attack Ms. Cave's qualifications as a "computer expert" here. (*See* ECF No. 69 at 7 (claiming that Ms. Cave's "July 31 deposition in *Mainor* provides ample reason to believe that [Ms. Cave] is not qualified" to testify as a technical expert).) But Experian never designated Ms. Cave as a computer expert in this matter, or in any other matter.  Rather, Ms. Cave has been designated as a corporate representative to testify on behalf of Experian regarding Experian's system capabilities.[2]  As Magistrate Judge Peggy A. Leen observed in *Mainor*, while plaintiff's counsel might be "skeptical because [Ms. Cave's] not a, quote, computer whiz," Ms. Cave "***doesn't have to give [Plaintiff's counsel] the nuts and the bolts of . . . how a TV works or how a computer works in order to be able to say what the company can or can't do***."  *Mainor*, No. 16-cv-183, ECF No. 97, Tr. at 21:10-14 (D. Nev. July 13, 2018) (emphasis added).  Yet, Plaintiff continued to seek to introduce Ms. Cave's testimony here to do precisely what Judge Leen instructed Plaintiff's counsel not to do in *Mainor*—*i.e.*, attack Ms. Cave's qualifications as a "computer whiz."

On August 27, 2018, Plaintiff filed an emergency motion to intervene in *Mainor*, seeking to modify the protective order and lift Experian's confidentiality designations on Ms. Cave's deposition transcript. *See* No. 16-cv-183, ECF No. 120.  The next day, on August 28, 2018, Plaintiff filed an emergency motion in this case, seeking to amend the protective order and extend the deadline to respond to Experian's supplemental declaration.  On September 7, 2018, Judge Leen permitted Plaintiff's counsel to lift the confidentiality designations on Ms. Cave's testimony in *Mainor*.  *See Mainor*, No. 16-cv-183, ECF No. 123.  That same day, Judge Ferenbach heard

---

[2] While Experian's counsel referred to Ms. Cave as an expert during the hearing, counsel never meant to suggest that Ms. Cave was a computer expert.  Rather, the comment was intended to distinguish Ms. Cave—a witness with specialized knowledge—from Plaintiff's counsel, a lawyer with no personal knowledge of Experian's systems or their capabilities, who nonetheless felt entitled to offer his opinion.  Ms. Cave is certainly competent to attest to Experian's system capabilities, but she has never been designated as a computer expert in this or any other case. Indeed, Experian never represented that Ms. Cave was a computer expert in its oppositions or at any other point in this matter, and Ms. Cave never purported to be a computer expert in any of her declarations.  (*See* ECF Nos. 54; 54-1.)

1   argument from Plaintiff's counsel on why Ms. Cave's testimony was needed in this case, and

2   whether Plaintiff should be entitled to an extension of his time to respond to Experian's

3   supplemental declaration.  (*See* ECF No. 77-78.)  Like Judge Leen, Judge Ferenbach recognized

4   that Ms. Cave is not a computer expert, that this was not a *Daubert* hearing, and that, as such, Ms.

5   Cave's qualifications as a computer expert were not at issue.  (*See id.* at 29:23-24 ("it's not a

6   Daubert hearing.  I'm not challenging people's expertise.").)  Nevertheless, Judge Ferenbach yet

7   again granted Plaintiff a limited extension to file his response on September 17, 2018.

8              **C.**     **Plaintiff's Expert Report**

9        On September 17, 2018, Plaintiff filed his response to Experian's supplemental declaration,

10  submitting the purported "Expert Report of Anya Verkhovskaya."   (ECF No. 79-2.)  Ms.

11  Verkhovskaya did not dispute that Experian's systems could not cross-reference the relevant fields

12  of data.  Instead, she proposed extracting the relevant data fields and importing them into Structured

13  Query Language ("SQL") tables to "run queries, cross-reference data, and apply filters." (*Id.* at ¶¶

14  34-35, 47.)  According to Ms. Verkhovskaya, "[t]he only information needed from Experian would

15  be outputs in any format of the File One and CAPS data for the approximate 556,244 records that

16  would include all related data points."  (*Id.* at  ¶ 38.)

17        Ms. Verkhovskaya further suggested that "High-speed OCR" could be implemented by her

18  and a team of experienced data programmers, and that "even if it were required for all of the

19  consumer disclosures and disclosure logs that might be included in the potential class, it would be

20  a manageable undertaking." (*Id.* at ¶ 30.)  In support, Ms. Verkhovskaya claimed that "High-speed

21  OCR" could process one page in about 2 seconds, and that it would take approximately 1,110 hours

22  to process 222,000 consumer disclosures containing about 9 pages of relevant information each.

23  (*Id.* at ¶ 31.)  She further claimed that completing a project of this size would cost approximately

24  $50,000.   Therefore, according to Ms. Verkhovskaya's assumptions and calculations, processing

25  all 556,244 records would take approximately 2,775 hours and cost approximately $125,000.  (*Id.*)

26  Significantly, however, Ms. Verkhovskaya did not make any mention of sampling, or claim to be

27  qualified to opine on the scientific validity of any proposed sample.

28

1

### D.   Experian's Reply Declaration

On September 27, 2018, Experian submitted the reply declaration of Kimberly Cave.  (ECF No. 83.)



1

2

3

4

5         **E.**      **The October 9, 2018 Hearing**

6         On October 9, 2018, Judge Ferenbach held his ***fourth*** hearing related to Plaintiff's requests

7 for class discovery.  (*See* ECF No. 88.)  At the hearing, the Court heard testimony from Ms.

8 Verkhovskaya regarding her proposed search methodology and Experian's ability to extract the

9 relevant data elements from File One.  (*See generally id.*)  Ms. Verkhovskaya testified that "if the

10 information exists in [Experian's] database, whether it is compulated [sic] or computed [sic] from

11 different fields, it exists and Experian can pull it out in a digital format in order to print a document."

12 (*Id.* at 11:19-23.)  Ms. Verkhovskaya further claimed that Experian could employ "variable

13 statements" to generate a SQL database from Experian's Admin Reports and Disclosure Logs,

14 assuming "electronic files exist with admin report and disclosure logs." (*Id.* at 44:17-25, 45:6-13.)

15 As Experian explained, however, such a process could not be implemented because "there is no

16 way to simply go in to File One and extract data; not only because it would compromise the integrity

17 of the data, but because some of these fields" are "nowhere to be found in File One." (*Id.* at 40:4-

18 9.)  Rather, the only way this information could reliably be extracted would be to generate Admin

19 Reports for the unnamed class members, which Plaintiff never requested.  (*Id.* at 36:1-9; 39:11-17;

20 40:14-17.)  Unable to dispute these facts, Plaintiff's counsel began raising entirely new discovery

21 proposals, including that the parties could use a "sampling method" to identify class members. (*Id.*

22 at 40:19-25.)  But these shifting proposals were improper, especially because Plaintiff never

23 requested that Experian produce Admin Reports or any other documents required to implement his

24 new proposals.  (*Id.* at 40:19-25, 41:1-3; 46:9-13; 49:13-25, 50:1.)  And Plaintiff certainly never

25 designated an expert during the discovery period that could opine on these issue at trial.

26         During the hearing, Judge Ferenbach echoed Experian's concerns.  (*Id.* at 43:20-25 ("I know

27 I've bent over backwards, I think, here trying to find a way, you know, that we can get into all

28 this.").)  As he recognized, however, there is not "any law or regulation that requires [Experian] to

set . . . up [its databases] to make it easier for [Plaintiff] to search out and find a class." (*Id.* at 44:3-6.)  Despite the many opportunities he had given Plaintiff to show otherwise, Judge Ferenbach concluded that Experian had conducted a "thorough investigation" but that "it's just not possible to get the information that the plaintiffs want without generating the actual admin reports and the disclosure statements." (*Id.* at 44:7-10.)  Consequently, Judge Ferenbach denied Plaintiff's motion to compel because "there's just not a proportional way to" conduct the requested discovery "on an automated basis." (*Id.* at 51:10-12.)

## ARGUMENT

Under Federal Rule of Civil Procedure 72(a), a district judge may "modify or set aside any part" of a magistrate judge's non-dispositive order "that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* D. Nev. L.R. IB 3-1 (allowing district judges to "modify or set aside" only those pretrial decisions by magistrate judges that are "clearly erroneous or is contrary to law"); 28 U.S.C. § 636(b)(1)(A) (same). "The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (citations omitted). This "standard is significantly deferential to the initial ruling," and the magistrate judge's decision should be overturned only "if, upon review, the Court is left with a definite and firm conviction that a mistake has been made." *Storlie v. State Farm Mut. Auto. Ins. Co.*, No. 2:09-cv-02205-GMN-PAL, 2010 WL 5490777, at *2 (D. Nev. Jan. 4, 2010) (citing *David H. Tedder & Assocs., Inc. v. United States*, 77 F.3d 1166, 1169-70 (9th Cir. 1996)). A magistrate judge's "order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Jadwin v. Cty. of Kern*, 767 F. Supp. 2d 1069, 1110-11 (E.D. Cal. 2011) (quoting *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006)). "Under Rule 72, the 'heavy' burden of proof lies with the moving party, and the highly deferential standard 'only permits reversal where the magistrate judge abused h[er] discretion.'" *Grief v. Nassau Cty.*, 246 F. Supp. 3d 560, 564 (E.D.N.Y. 2017) (quoting *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015)).  Because Plaintiff has failed to demonstrate that Judge Ferenbach abused his discretion in denying Plaintiff's motion to compel, Plaintiff's objection must be denied.

1    **I.    Experian's Systems Cannot Identify Members of Plaintiff's Putative Class**

2         Plaintiff's motion to compel was premised solely on his counsel's belief that Experian's

3    systems could identify putative class members in an automated manner.  In support of that belief,

4    Plaintiff's counsel created flowcharts that purported to depict an automated search based on two

5    Experian output documents.  Without any factual support, Plaintiff's counsel unequivocally

6    claimed "that a system can be designed to automatically obtain the great majority of the [Disputed

7    Discovery], while a semi-manual process can be used to ascertain outliers."  (ECF No. 49 at 3.)

8    But, as Experian repeatedly explained, Experian's systems do not have the ability to cross-reference

9    information in the way Plaintiff's counsel believes, and the only way to identify the information

10   Plaintiff seeks is to retrieve and review archived Consumer Disclosures.

11        After Experian submitted its supplemental declaration further elaborating on these points,

12   Plaintiff seemingly abandoned his counsel's theory, submitting an alleged "expert report" that

13   proposed an entirely new theory based on discovery never sought during the class discovery period.

14   (ECF No. 89-1.)  Indeed, rather than attempt to substantiate Plaintiff's theory that an automated

15   search could be constructed within Experian's systems (as purportedly depicted on the flowcharts),

16   Plaintiff's expert proposed extracting and importing data elements form File One into SQL tables,

17   then implementing a high-speed OCR process for certain members that would not be captured by

18   the automated search, which would purportedly cost somewhere between $30,000-$80,000.  (*Id.* at

19   ¶¶ 22-40, 47; ECF No. 88, Tr. at 11:4-25, 13:19-21.)

20        Not only did Plaintiff fail to seek any of this discovery during the discovery period, but

21   Plaintiff's expert falsely assumed that the relevant data points could simply be extracted from File

22   One.  (*See* ECF No. 89-1 at ¶ 24.)  As Experian demonstrated, however, File One does not store

23   information in the way it is reflected on an Admin Report, and Experian has no Admin Reports for

24   unnamed class members from which to extract the relevant data elements.  (*See* ECF No. 66 at ¶¶

25   8-10.)  That Judge Ferenbach credited Experian's testimony over Plaintiff's purported expert does

26   not constitute reversible error.  *See Garcia v. E.J. Amusements of N.H., Inc.*, 89 F. Supp. 3d 211,

27   214 (D. Mass. 2015) ("Under the 'clearly erroneous' standard, the Court will accept the magistrate

28   judge's findings of fact and conclusions drawn therefrom unless after scrutinizing the entire

1   records, [the Court] form[s] a strong, unyielding belief that a mistake has been made.") (citations

2   and quotation marks omitted).  To the contrary, Judge Ferenbach simply accepted the fact that

3   Experian's systems are not designed "to search out and find a class."  (*See* ECF No. 88, Tr. at 44:3-

4   10; *see also id.* at 51:10-13 ("Well, having balanced that all out, it really—I do conclude that there's

5   just not a proportional way to do this on an automated basis.").)

6          Notably, Judge Ferenbach is not the only magistrate to reject Plaintiff's counsel's assertions

7   regarding a credit reporting agency's system capabilities.  Judge Koppe recently reached a similar

8   result in *Barnum v. Equifax*, No. 2:18-cv-02866-RFB-NJK, 2018 WL 125492 (D. Nev. Mar. 9,

9   2018).  There, the plaintiff sought discovery related to the manner in which Equifax received,

10  reviewed and responded to consumer disputes.  *Barnum*, 2018 WL 1245492, at *2.  Similar to

11  Experian, Equifax was able to ascertain general information about consumer disputes during the

12  relevant period, but it could not provide a more individualized or detailed response without

13  conducting a manual, file-by-file review.  *Id.*  Although the *Barnum* plaintiff—like the plaintiff in

14  this case—doubted the veracity of Equifax's representations, the Court found that Equifax had

15  established an undue burden through sworn testimony that it would be required to conduct "an

16  individualized review of millions of files," which "would require an extensive time commitment

17  by Equifax's employees."  *Id*

18         As in *Barnum*, Experian would incur significant cost and expense to review hundreds of

19  thousands of archived Consumer Disclosures.  ███████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████████████

26  ████████████  ████  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████  Thus, Plaintiff himself would not have been captured by

28  his own search methodology.

At bottom, the inability of Experian's systems to identify members of Plaintiff's putative class simply underscores the flaw in Plaintiff's class definition.  While Plaintiff claims that he "easily makes out [sic] prima facie showing of the elements of Rule 23" (ECF No. 89 at 13), he never even attempted to make any such showing in any of his prior motions, and he fares no better here.  As Experian will demonstrate more fully in opposition to class certification, Plaintiff cannot meet the requirements of Rule 23 because, among other things, Plaintiff has no means of identifying class members absent engaging in extensive and individualized fact-finding—*i.e.*, conducting countless mini-trials.  *See Fed. Hous. Fin. Agency v. SFR Investments Pool 1, LLC*, No. 2:15-cv-01338-GMN-CWH, 2016 WL 2350121, at *4 (D. Nev. May 2, 2016) (finding that the "proposed class is not reasonably ascertainable" where an inquiry into class membership "would result in countless hearings resembling 'mini-trials'"), *aff'd sub nom. Fed. Home Loan Mortg. Corp. v. SFR Investments Pool 1, LLC*, 893 F.3d 1136 (9th Cir. 2018); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) ("The inquiry into class membership must not require holding countless hearings resembling 'mini-trials.'").[3]

## II.   Judge Ferenbach Properly Rejected Plaintiff's Alternative Proposals

Skirting the fundamental issue at play in his motion—*i.e.*, whether Experian's systems can identify members of his putative class—Plaintiff argues that Judge Ferenbach erred by failing to consider two of Plaintiff's "alternative proposals" for conducting the sought-after discovery.  (ECF No. 89 at 16-18.)  These proposals, however, were insufficiently raised below and, in any event, do not remedy the previously discussed flaws underlying Plaintiff's requested discovery.

*First*, Plaintiff argues that even if "Experian truly had no 'electronic means' to ascertain the Class," Plaintiff's newly identified expert's "firm could employ high-speed OCR processes to capture relevant information from the consumer disclosures Experian has already identified." (ECF No. 89 at 16.)  But, as before, Plaintiff utterly fails "to account for the time required to retrieve Consumer Disclosures (both active and archived) from CAPS," which requires printing the

---

[3] Plaintiff's claim that Judge Ferenbach abused his discretion by refusing "to permit pre-certification discovery" should fall on deaf ears.  (ECF No. 89 at 14.)  Judge Ferenbach did not deny Plaintiff pre-certification discovery.  To the contrary, Plaintiff had nearly a year to pursue class discovery, but he simply failed to do so diligently.

Consumer Disclosures in physical form. (*See* ECF No. 83 at ¶ 16.) Indeed, to "capture" the relevant information through OCR, Experian would first need to generate individual Consumer Disclosures—information Plaintiff never requested during discovery, which is now closed. Consequently, Plaintiff's OCR proposal is unhelpful, as it relies on a misunderstanding of Experian's systems and does not meaningfully address the issue of undue burden. Judge Ferenbach therefore reasonably rejected it, particularly since Experian is in the best position to know how its own systems operate. *See Barnum*, 2018 WL 1245492, at *2 ("A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination.") (quoting *Nationstar Mtg., LLC v. Flamingo Trails No. 7 Landscape Maintenance Assoc.*, 316 F.R.D. 327, 334 (D. Nev. 2016)); *see also Brewer v. BNSF Railway Co.*, No. 14-cv-65, 2018 WL 882812, at *2 (D. Mont. Feb. 14, 2018) (noting that "responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for reserving and producing their own electronically stored information") (citations and quotation marks omitted). Nothing about Judge Ferenbach's resolution of competing testimony—Plaintiff's expert on the one hand and Experian's witness on the other—constitutes clear error.

*Second*, Plaintiff contends that his expert "proposed that 'sampling' of a selective number of consumer disclosures could also be performed." (ECF No. 89 at 15.) Tellingly, Plaintiff makes this assertion without citing to his expert's report or testimony. (*Id.*) This is because Plaintiff's expert never proposed or even discussed sampling—neither in her report nor at the October 9 hearing. (*See generally*, ECF Nos. 88, 89-1.) Instead, it was *Plaintiff's counsel* who proposed sampling for the first time at the October 9 hearing. (*See* ECF No. No. 88, Tr. at 26:8-20 ("The other way that we can get around this problem is by using a statistically-acceptable sampling method, and that's something else Ms. Verkhovskaya has a great deal of experience with and can testify about."); 48:20-25.) Nowhere in the record has Plaintiff or his expert explained the details of his proposed sampling method, much less why it would be "statistically-acceptable" or valid. More to the point, as Judge Ferenbach recognized, it is not clear what benefit sampling would have to identify the individual members of Plaintiff's proposed class, since identifying additional members beyond the sampled group would still require individual review. (*Id.* at 26:21-24.) ("But,

1   you know, I mean, in a lot of discovery issues sampling might give you something useful, but here

2   what you're trying to go do is identify individual members of a class. So how is sampling going to

3   help you at all?")

4        In his brief, Plaintiff attempts to justify his sampling proposal as a cost-saving measure by

5   performing back-of-the-napkin calculations about how much sampling would cost. (*See* ECF No.

6   89 at 15-16.) But Plaintiff's expert never even discussed sampling, and Plaintiff's hypothetical

7   calculations have no evidentiary basis. (*See id.*) Rather, Plaintiff raises these issues for the first on

8   appeal, and still without any evidentiary support. The Court should reject Plaintiff's baseless and

9   belated arguments and proposals. *See Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633,

10  638-39 (9th Cir. 1988), *overruled on other grounds by United States v. Hardesty,* 977 F.2d 1347,

11  1348 (9th Cir. 1992) ("We do not believe that the Magistrates Act was intended to give litigants an

12  opportunity to run one version of their case past the magistrate, then another past the district

13  court."); *see also Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y.) ("A

14  district court will ordinarily refuse to consider new arguments, evidence, or law that could have

15  been, but was not, presented to the magistrate judge.") (citations omitted).

16       As Experian's counsel made clear at the October 9 hearing, if Plaintiff wanted to discuss

17  sampling or the production of documents for OCR, the time to make those requests expired with

18  the close of discovery. (ECF No. 88, Tr. at 49:17-21 ("And to the extent that plaintiff wanted to

19  either sample or request—request these documents, request 100 consumer disclosures, or request

20  16,000, it certainly should have done so during the discovery period.").) In the end, Judge

21  Ferenbach reasonably rejected Plaintiff's alternative proposals, which were—and still are—

22  unsupported, unhelpful, and untimely.

23  **III.   <u>Experian's Position Has Remained Consistent in This and in Others Cases</u>**

24       Unable to show that Judge Ferenbach committed any clear error in rejecting Plaintiff's (and

25  his expert's) assertions, Plaintiff resorts to ad hominem attacks on Experian's counsel and witness,

26  and completely distorts the record in this case and others.

27       Plaintiff first claims that Experian's counsel somehow suggested during the hearing that

28  Experian does not backup its data. This is absurd and patently false. In response to Judge

1    Ferenbach's question regarding whether a mirror image could be created like with "somebody's

2    iPhone," Experian's counsel responded that he did not "think that's possible" because File One is

3    one of the "largest databases in the world." (*Id.* at 38:5-19.) Experian's counsel further explained

4    that, consistent with Ms. Cave's reply declaration (ECF No. 83), extracting the data directly from

5    File One could compromise the integrity of the data because it would bypass Experian's proprietary

6    algorithms. (ECF No. 88, Tr. at 38:17-24.) Nowhere did Experian's counsel ever suggest that

7    Experian "is unable to make any backups," as Plaintiff claims. (ECF No. 89 at 18.)

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   █████████████████████████████████████████████████ And,

15   because Experian neither generates nor archives Admin Reports in the ordinary course of its

16   business, there are no Admin Reports for unnamed class members.

17         Plaintiff's attempts to discredit Ms. Cave fare no better. While Plaintiff purports to identify

18   purported inconsistencies in Ms. Cave's testimony in this case and in *Mainor*, Judge Ferenbach

19   considered and rejected these same arguments, finding that Ms. Cave's testimony from *Mainor* was

20   "consistent with what [Experian was] saying" in this matter. (ECF No. 88, Tr. at 22:23-23:3.)

21   Despite Plaintiff's protestations that Judge Ferenbach "told Plaintiff's counsel to stop without

22   reading the evidence into the record," (ECF No. 89 at 20), Judge Ferenbach fully considered Ms.

23   Cave's testimony in *Mainor*. (*See* ECF No. 88, Tr. at 20:19-23:9).[4] Plaintiff is simply unhappy

24   that Judge Ferenbach disagreed with him.

25         Plaintiff's attacks on Ms. Cave's qualifications as a "computer whiz" are equally unavailing.

26   As in *Mainor*, Ms. Cave submitted her testimony in this matter in her representative capacity on

27   _____

28         [4] Plaintiff supports his erroneous assertion by giving a partial cite to page 21:6 of the
     transcript. (ECF No. 89 at 20 n.102.)

behalf of Experian,[5] not as expert opinion testimony. Thus, her testimony represents the knowledge of Experian, not Ms. Cave individually. *See Risinger v. SOC, LLC*, 306 F.R.D. 655, 662 (D. Nev. 2015) ("The testimony of a Rule 30(b)(6) designee represents the knowledge of the corporation, not the individual deponents.") (citation omitted). Indeed, Ms. Cave has never claimed to be a computer expert, and Experian has never designated her as one. She has, however, been educated on Experian's system capabilities, and is competent to testify about them. As Judge Leen recognized in *Mainor*, Ms. Cave does not have to be a "computer whiz" or "give [Plaintiff's counsel] the nuts and the bolts of . . . how a TV works or how a computer works in order to be able to say what the company can or can't do." *Mainor*, Case No. 2:16-cv-00183, ECF No. 97, Tr. at 21:10-14 (D. Nev. July 13, 2018) (emphasis added); *see also Barnum*, 2018 WL 1245492, at *2 (relying on testimony of an operations strategist regarding Equifax's system capabilities). As Judge Ferenbach recognized, the same holds true here. (*See* ECF No. 78, Tr. at 29:23-24 ("it's not a Daubert hearing. I'm not challenging people's expertise.").)

In a last ditch effort to discredit Ms. Cave, Plaintiff claims that Ms. Cave's declarations in this matter were somehow inconsistent with a declaration from Ms. Cave in yet another matter, *Farmer v. Experian Information Solutions, Inc.*, No. 17-cv-1531-RFB-PAL, ECF No. 30-1 (D. Nev. Oct. 15, 2018). But Ms. Cave's testimony in this matter is perfectly aligned with her testimony in *Farmer*. Here, as in *Farmer*, Ms. Cave has, since her initial declaration on July 2, 2018, testified that Experian can identify the total number of consumer who currently report either a Chapter 7 or Chapter 13 bankruptcy. (ECF No. 54-1 at ¶ 22.) Experian can then take that list and determine which of those consumers received a Consumer Disclosure (as in *Leoni*) or filed a dispute (as in *Farmer*) during the relevant time period. (*Id.* at ¶¶ 22-23.) This position has also be reiterated by Ms. Cave and Experian's counsel throughout these proceedings. (*See generally*, ECF Nos. 54, 65, 66, 83, 88.) Plaintiff's claims to the contrary are wholly without merit.

---

[5] This is also precisely how Equifax presented testimony in its successful opposition to Plaintiff's motion to compel similar discovery in *Barnum*. 2018 WL 1245492, at *2 ("Equifax has filed a declaration explaining that complying with the itemized discovery requests would require an individualized review of millions of files.").

**IV.** **Judge Ferenbach Properly Denied Extending Discovery**

Plaintiff also objects to Judge Ferenbach's order denying Plaintiff's motion to reconsider Judge Ferenbach's refusal to extend discovery for a *fifth* time. In doing so, Plaintiff fails to explain how Judge Ferenbach's order was inconsistent with the applicable standards for motions to reconsider. *See Nunes v. Ashcroft*, 375 F.3d 805, 807 (9th Cir. 2004) (explaining that reconsideration is appropriate for (1) newly discovered evidence, (2) clear error or manifest injustice, or (3) intervening changes in controlling law); *see also* D. Nev. L.R. 59-1 (same). In fact, Plaintiff fails to cite *any* legal authority for his position that Judge Ferenbach erred on this ground. (*See* ECF No. 89 at 20-21.)

Instead, Plaintiff rehashes the same arguments he made in his original motion to extend discovery, even though he did not object to Judge Ferenbach's ruling on that motion. Plaintiff's arguments failed then and they should fail now. To justify an extension of time, Plaintiff must show, among other things, good cause—which primarily requires a showing of diligence. *See* Fed. R. Civ. P. 6(b); *Harden*, 2016 WL 7155743, at *2 ("The good cause inquiry focuses primarily on the movant's diligence."). To date, Plaintiff has yet to explain why he waited until the eve of the discovery deadline to raise the issues outlined in the May 2018 Letter, why he did not move to compel sooner despite having Experian's responses for months, why he affirmatively represented to the Court in April 2018 that there were no discovery disputes between the parties, and why he did not notice any additional depositions despite claiming to need them. As Judge Ferenbach aptly put it, Plaintiff "sat on this" discovery, waited until the "last minute" to seek further discovery, and should not now be permitted to "revive" these issues "at this late date"—*i.e.*, Plaintiff was not diligent. (ECF No. 48, Tr. at 28:17-18, 29:24-25, 37:4-20.)

To justify his lack of diligence, Plaintiff claims that his counsel had the expectation that discovery was being coordinated across all of Plaintiff's counsel's cases against Experian. But this unfounded expectation is directly contrary to Plaintiff's counsel's prior positions taken in this case and others. *See Ashcaft*, No. 2:16-cv-02978-JAD-NJK, ECF No. 23 (denying Experian's motion to consolidate based in part on plaintiff's opposition to the motion); *see also Dunlap v. Wells Fargo Fin.*, No. 2:17-cv-00097-RFB-JAL, ECF No. 22 (denying Experian's motion for consolidation

based in part on Judge Koppe's *Ashcraft* decision). Indeed, Plaintiff omits any citation to any order or case that would justify this faulty assumption. (*See* ECF No. 89 at 20-21.) And, he conspicuously fails to cite any communication between the parties showing any agreement regarding consolidation of this case with any other case. (*Id.*)

In short, Plaintiff cannot show that his original motion to extend the discovery deadline was meritorious and, more to the point, Plaintiff cannot show that Judge Ferenbach should have reconsidered denying that motion.

## CONCLUSION

Based on the forgoing, Experian respectfully requests that the Court affirm Judge Ferenbach's findings and deny Plaintiff's Motion in its entirety.

DATED this 6th day of November 2018.

NAYLOR & BRASTER

By: */s/ Jennifer L. Braster*
Jennifer L. Braster
Nevada Bar No. 9982
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145

Cheryl L. O'Connor
Nevada Bar No. 14745
Ryan D. Ball
*Admitted Pro Hac Vice*
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408

*Attorneys for Defendant Experian Information Solutions, Inc.*

1

## <u>CERTIFICATE OF SERVICE</u>

2      Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee of

3   JONES DAY and that on this 6th day of November, 2018, I caused the document **DEFENDANT**

4   **EXPERIAN  INFORMATION  SOLUTIONS,  INC.'S  OPPOSITION  TO  PLAINTIFF'S**

5   **APPEAL/OBJECTIONS  TO  THE  COURT'S  OCTOBER  9,  2018  ORDER  DENYING**

6   **PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR RECONSIDERATION [ECF**

7   **DKT. 49, 53, 87, 88]** to be served through the Court's CM/ECF system addressed to:

8

| | |
|---|---|
| Matthew I. Knepper<br>Miles N. Clark<br>Knepper & Clark, LLC<br>10040 W. Cheyenne Ave. Suite 170-109<br>Las Vegas, NV 89129<br>702-825-6060<br>Fax: 702-447-8048<br>Email:<br>matthew.knepper@knepperclark.com<br>miles.clark@knepperclark.com<br>*Attorneys for Plaintiff* | Sean N. Payne<br>PAYNE LAW FIRM LLC<br>9550 S. Eastern Ave. Suite 253-A213<br>Las Vegas, NV 89123<br>702-952-2733<br>Fax: 702-462-7227<br>Email: seanpayne@spaynelaw.com<br>*Attorneys for Plaintiff* |
| David H. Krieger<br>Haines & Krieger, LLC<br>8985 S. Eastern Avenue<br>Suite 350<br>Henderson, NV 89123<br>(702) 880-5554<br>Fax: (702) 383-5518<br>Email: dkrieger@hainesandkrieger.com<br>*Attorneys for Plaintiff* | |

9

10

11

12

13

14

15

16

17

18

19

20

21                    /s/ Jennifer L. Braster

22                    An Employee of NAYLOR & BRASTER

23

24

25

26

27

28