Cheryl L. O'Connor
Nevada Bar No. 14745
coconnor@jonesday.com
Ryan D. Ball
*Admitted Pro Hac Vice*
rball@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612.4408
Telephone:    (949) 851-3939
Facsimile:    (949) 553-7539

Jennifer L. Braster
Nevada Bar No. 9982
NAYLOR & BRASTER
1050 Indigo Drive, Suite 200
Las Vegas, NV  89145
Telephone:    (702) 420-7000
Facsimile:    (702) 420-7001
jbraster@naylorandbrasterlaw.com

Attorneys for Defendant
Experian Information Solutions, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DAVID LEONI,<br><br>                    Plaintiff,<br><br>        v.<br><br>EXPERIAN INFORMATION SOLUTIONS,<br>INC. and MILITARY STAR,<br><br>                    Defendants. | Case No. 2:17-cv-01408-RFB-VCF<br><br>**DEFENDANT EXPERIAN<br>INFORMATION SOLUTIONS, INC.'S<br>REPLY IN FURTHER SUPPORT OF<br>ITS MOTION FOR SUMMARY<br>JUDGMENT** |

**INTRODUCTION**

This action is premised on a single sentence in Plaintiff's consumer disclosure that stated that Plaintiff's Military Star account was included in his bankruptcy on November 8, 2016, after Plaintiff received a discharge on August 1, 2016.  As Experian demonstrated in both its motion for summary judgment ("Opening Br.," ECF No. 98) and its opposition to Plaintiff's motion for summary judgment ("Opposition," ECF No. 110), this bankruptcy inclusion date was not disclosed to a third party, did not mislead or confuse Plaintiff (or any other consumer), and has not caused any cognizable harm.  In fact, Plaintiff never even mentioned his bankruptcy in his Experian dispute.  For these reasons, Experian is entitled to summary judgment on all of Plaintiff's claims.

**ARGUMENT**

**I.     Plaintiff Cannot Establish A Violation Of § 1681g**

As Experian has shown, Plaintiff's § 1681g claim fails as a matter of law because the alleged inaccuracy regarding Plaintiff's own bankruptcy was not (and is not) included in a consumer report sent to a third party.  Rather, the information Plaintiff disputes here—*i.e.*, the date his Military Star account was "included in" bankruptcy—is included in a consumer disclosure only "to make [the] disclosure more user friendly for the consumer."  (Deposition of Douglas Hollon ("Hollon Dep."), ECF No. 98-1 at 079-92, 313:25-314:23.)  More fundamentally, the record establishes that Plaintiff, as an average consumer, was not confused or misled about the accuracy of the bankruptcy inclusion date reported in his consumer disclosure.  Instead, Plaintiff knew the status of his bankruptcy, and he knew the November 6, 2016 date reflected under the Account History section of his Military Star account was incorrect.  While Plaintiff attempts to explain away these fatal flaws, he cannot escape the fact that there is no evidence from which a reasonably jury could find that Experian violated § 1681g(a)(1).

**A.     Plaintiff Was Not Confused or Misled About The Reporting Of His Bankruptcy**

Section 1681g requires CRAs, such as Experian, to make disclosures "in a manner sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information in order to allow the consumer to determine the accuracy of the information set forth in her credit file." *Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941

(7th Cir. 2007).  Thus, the operative inquiry under § 1681g is "whether the disclosure is 'understandable to the average consumer.'"  *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018) (citations omitted); *see also Alexander v. Equifax Info. Servs.*, No. 2:17-cv-00139-APG-NJK, 2018 WL 3025939, at *6 (D. Nev. June 15, 2018) (recognizing that "the operative question under § 1681g is whether a disclosure is unclear such that the consumer cannot determine the accuracy of the information in that disclosure").  Because Plaintiff has not presented any evidence that he, or any other consumer, was confused or misled about the manner in which Experian reports bankruptcy inclusion dates, his § 1681g claim fails as a matter of law.

As Experian has shown, the testimony of Plaintiff—the purported representative of the "average consumer" in this case—establishes that the information Experian provided to him about his bankruptcy was clear such that he could easily determine its accuracy.  Plaintiff had one bankruptcy, and he knew that it was filed in March 2011.  (Deposition of David Leoni ("D. Leoni Dep."), ECF No. 98-1 at 135-55, 35:3-36:9.)  He knew that his bankruptcy was discharged on August 1, 2016.  (*Id*. at 13:4-11; 52:5-7.)  And he knew that the Military Star account was included in the bankruptcy.  (*Id*. at 60:17-24.)  All this led Plaintiff to believe that the "included in bankruptcy" date of November 8, 2016 for the Military Star account was incorrect because it was after the date on which his bankruptcy was discharged.  (*Id*. at 224:13-225:7.)  He recognized this when he reviewed his Experian consumer disclosure.  (*Id*. at 14:16-24 ("…the dates were wrong. If I remember, recall, finished bankruptcy, but there was dates after that, like, what's going on here? It was like, you know, probably human error, but it's wrong.")  And he was certain that he had not filed a second bankruptcy, acknowledging that his consumer disclosure displayed only the one bankruptcy that he filed in March 2011.  (*Id*. at 142:6-144:24.)  When questioned about his alleged confusion, Plaintiff could not explain how the "included in" date suggested to him that his bankruptcy had been reopened or would report longer than permitted under the FCRA.  (*Id*. at 144:25-146:9.)

Unable to dispute this devastating testimony, Plaintiff claims that Experian is seeking to impose a subjective, rather than an objective, standard.  But Plaintiff offers no evidence to support his claim that he, or any other average consumer, was confused or misled about the manner in

EXPERIAN'S REPLY TO MSJ
Case No. 2:17-cv-01408-RFB-VCF

which Experian reports the date an account was included in bankruptcy.  Instead, Plaintiff falsely claims that "Plaintiff and Experian agree" that the included in bankruptcy date was confusing because it suggests that Plaintiff "proceeded through more than one bankruptcy proceeding." (ECF No. 109 at 10.)  In support, Plaintiff cites to his own expert witness who claimed that the bankruptcy inclusion date was an "illogical error," testimony from Experian's expert witness that she did not know whether an ordinary consumer would wonder whether the bankruptcy inclusion dates on Plaintiff's consumer disclosure were different, and Rule 30(b)(6) testimony from Experian *in another case* that the witness had never seen an account history section that had a date included in bankruptcy after the date of discharge, but "wouldn't know what sense that would make." (*See id.*)  None of this evidence, however, demonstrates that an average consumer was (or would be) confused by the manner in which Experian reports bankruptcy inclusion dates, or misled into believing that he or she had proceeded through more than one bankruptcy.  Indeed, industry experts "don't truly know what would be in the mind of an ordinary consumer." (Deposition of Mary Methvin ("Methvin Dep."), ECF No. 90-25 at 159:8-22.)  And consumers certainly know how many bankruptcies they have filed, and whether Experian was reporting the correct date on which an account had been included in their bankruptcy (as Plaintiff's own testimony demonstrates here).

Moreover, if Plaintiff himself was not confused by Experian's reporting of his Military Star account, then he lacks standing to assert a claim under § 1681g(a)(1).  In *Spokeo*, the Supreme Court reaffirmed that, to establish standing, an individual must demonstrate that he has suffered a "concrete" and "de facto" injury that "must actually exist" and be "real." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  Congress "cannot erase" the requirement that persons demonstrate a real injury by statutorily "granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547–48 (citation omitted). Thus, a plaintiff may not recover for a "bare" statutory "violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549.  Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

Where, as here, a plaintiff seeks redress for informational injury allegedly caused by the violation of a statute, courts look to "the type of harm Congress sought to prevent by requiring

EXPERIAN'S REPLY TO MSJ
Case No. 2:17-cv-01408-RFB-VCF

disclosure." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017).  This is "because 'Congress is well positioned to identify intangible harms that meet minimum Article III requirements.'"  *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 781 (9th Cir. 2018) (quoting *Spokeo*, 136 S.Ct. at 1549).  Courts have recognized that "[t]he purpose  of § 1681g is not to ensure that a credit reporting agency is disclosing accurate information to consumers; rather, its purpose is to enable consumers to obtain information in order to dispute any potential inaccuracies in the file so that inaccurate information is not sent to third parties."  *Selvam v. Experian Info. Sols., Inc.*, 651 F. App'x 29, 33 (2d Cir. 2016); *Gillespie*, 484 F.3d at 941 (recognizing that "primary purposes [sic] of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under § 1681i"); *Hauser v. Equifax, Inc.*, 602 F.2d 811, 817 (8th Cir. 1979) ("The purpose of the Act's disclosure requirement [in 15 U.S.C. § 1681g(a)] is to provide the consumer with an opportunity to dispute the accuracy of information in his file.").  Because the record plainly demonstrates that Plaintiff was able to determine the alleged inaccuracy of the Military Star account information, Plaintiff suffered no informational injury under § 1681g.

Plaintiff nevertheless attempts to save his claims by citing to is his own self-serving testimony elicited by his attorney through improper leading questions on "re-direct."  Indeed, this is Plaintiff's *only* evidence demonstrating his alleged confusion.  But a plaintiff cannot survive summary judgment based solely on answers he gave to his own attorney's leading questions in a deposition, as such testimony is not admissible.[1]  *See Haney v. 3M Co.*, No. 12-cv-1396, 2015 WL 4429439, *5 (D. Md. July 16, 2015) (granting summary judgment where the only evidence presented was elicited through "impermissibly leading" questions that "suggest[ed] the desired answer") (citations omitted); *Bishop v. Peppertree Resorts, Ltd.*, 212 F. Supp. 2d 518, 523-24 (W.D.N.C. 2002), *aff'd*, 58 F. App'x 997 (4th Cir. 2003) (granting summary judgment where the plaintiff offered attorney-led deposition testimony as the "only . . . piece of evidence" of

---

[1] Moreover, Plaintiff's change in testimony—testifying that he was not confused when questioned in detail by Experian's counsel but that he was confused when asked leading questions by his own counsel—is the functional equivalent to a sham affidavit. *See, e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

discrimination because such evidence "is not admissible"); *see also Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1329 (7th Cir. 1979) (affirming exclusion of deposition testimony that "consisted of [the party's] adoption of what was in effect his attorney's testimony on ultimate issues").

Even if the Court considers Plaintiff's guided testimony, Plaintiff reiterated to his counsel that he "thought it was an error," and that he "kn[e]w the date I was done. I know when I started bankruptcy, and I need to get this fixed. So I started this – hired attorney, and we're resolving it right now." (D. Leoni Dep., ECF No. 110-2, 211:3-14.)  Thus, despite his counsel's best efforts to manufacture evidence of confusion, Plaintiff plainly understood the information on his consumer disclosure, knew his own bankruptcy history, believed there was a clear error, and instead of disputing it with Experian, chose to file a lawsuit. (D. Leoni Dep., ECF No. 98-1 at 135-55, 224:13-225:16.)  That Plaintiff may have been frustrated about Experian's reporting does not support a claim for relief under § 1681g.  *See Dreher*, 856 F.3d at 346 ("To be sure, it would be an end-run around the qualifications for constitutional standing if any nebulous frustration resulting from a statutory violation would suffice as an informational injury.")

Accordingly, because Plaintiff has offered no evidence that the "included in bankruptcy" date was "confusing" or "misleading" to him (or any other consumer), his § 1681g claim fails as a matter of law.  *See Alexander*, 2018 WL 3025939, at *6 (granting summary judgment where plaintiff had "not produced any evidence to show that the disclosure[] [was] so unclear as to be insufficient for him to determine [its] accuracy").

### B.    Section 1681g Does Not Apply To The Bankruptcy Inclusion Date

Even if Plaintiff could establish that he was somehow misled or confused by Experian's reporting, his § 1681g claim would still fail, as Experian does not report the "included in bankruptcy" remark to third parties.  Rather, this information is included only in consumer disclosures.  Courts have made clear that § 1681g requires CRAs to provide consumers with "complete copies of their *consumer reports*, not their entire files in whatever form maintained by the CRA." *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007) (emphasis added); *Shaw*, 891 F.3d at 760 (finding that consumers are "not entitled by the FCRA to information that is not in their [consumer] report").  As noted, the purpose of § 1681g is to provide the consumer

with the complete information that would be sent in a consumer report to third parties to allow the consumer to determine if there is information that should be disputed through § 1681i.  *See Selvam v*, 651 F. App'x at 33; *Gillespie*, 484 F.3d at 941; *Hauser*, 602 F.2d 817.

Congress, the FTC, and the federal courts—including the Ninth Circuit—have unanimously recognized that the contents of a consumer's "file" for purposes of a "consumer disclosure" means the "information on the consumer that is recorded and retained by a [CRA] that might be furnished, or has been furnished, in a *consumer report* on that consumer."  *Shaw*, 891 F.3d at 759 (quoting *Gillespie*, 482 F.3d at 909) (emphasis added); *Foskaris v. Experian Info. Sols., Inc.*, No. 2:17-cv-00506-KJD-PAL, 2018 WL 3381394, at *2-3 (D. Nev. July 11, 2018) ("Section 1681g only requires CRAs to disclose the consumer file, which pertains to information that has previously been furnished or that might be furnished in a consumer report, not in a consumer disclosure.").  In other words, if Experian does not include certain information in a consumer report or "credit report" furnished to a third party, the FCRA does not require it to include such information in a "consumer disclosure" to the consumer, and the requirements of § 1681g do not apply.  *Shaw*, 891 F.3d at 759.

As Experian has shown, the information Plaintiff disputes here—*i.e.*, the date his Military Star account was "included in" bankruptcy—is not provided to any third party in any consumer report. (*See* Declaration of Kimberly Cave ("Cave Decl."), ECF No. 98-1 at 5-9, ¶ 9.)  Indeed, this sentence is never included in any consumer report, but is instead included in a consumer disclosure only "to make [the] disclosure more user friendly for the consumer."  (Hollon Dep., ECF No. 98-1 at 079-92, 313:25-314:23.)   Thus, because Plaintiff's purported confusion does not relate to information that § 1681g requires to be disclosed, § 1681g does not apply, and Plaintiff has no claim.  *See Shaw*, 891 F.3d at 759-760 (affirming summary judgment for Experian on § 1681g claim because disputed information was "not information retained by Experian in any credit report. Therefore, it falls outside the bounds of a 'file' for purposes of § 1681g(a)."); *Foskaris*, 2018 WL 3381394, at *3 ("Because Plaintiff does not claim that Defendant provided the permissible purpose in past credit reports, or plan to do so in the future, Section 1681g does not apply and Plaintiff's claim is dismissed.").

Plaintiff attempts to cure this fatal flaw by suggesting that the reinvestigation results Experian sent to him—which included a consumer disclosure reflecting changes and updates made to the information in his file as a result of his dispute—is both a consumer disclosure *and* a consumer report. But "Courts expressly caution against conflating these two types of documents when interpreting the FCRA." *Larson v. Trans Union, LLC*, No. 12-cv-05726, 2013 WL 5665629, at \*4 (N.D. Cal. Oct. 15, 2013); *see also Baker v. Trans Union LLC*, No. 10-cv-8038, 2010 WL 2104622, at \*5 (D. Ariz. May 25, 2010) ("That [plaintiff] asked where she could obtain a complete 'consumer disclosure (credit report)' reflects her misunderstanding of the distinction between consumer disclosures and consumer reports. The text of the FCRA and FTC commentary thereon indicate that the two are not one and the same."). As the Ninth Circuit made clear in *Shaw*, "[a] consumer, or credit, report is a CRA-prepared report that a CRA issues to third parties" to assess a consumer's eligibility for credit, insurance, and other qualifying purposes. 891 F.3d at 755 n.3 (citing 15 U.S.C. § 1681a(d)(1)); *see also Gillespie*, 482 F.3d at 908. Consumer disclosures, on the other hand, are not used for these purposes, and are not provided to third parties. *See Foskaris*, 2018 WL 3381394, at \*3 ("a consumer disclosure is different than a consumer report because a consumer disclosure is not expected to be a factor in determining a consumer's eligibility for credit"); *Clark v. Experian Info. Sols., Inc.*, No. 8:00-1217-22, 2004 WL 256433, at \*2 n.10 (D.S.C. Jan. 14, 2004) (recognizing that "the term 'Consumer Disclosure' refers to a report given directly to a consumer as contemplated by 15 U.S.C. § 1681g," whereas "Credit Report . . . refers to the type disclosure covered by 15 U.S.C. § 1681a(d) when that report is given to someone other than the consumer"). Because Plaintiff's reinvestigation results are not—and were not—a "CRA-prepared report that a CRA issues to third parties," they do not constitute a consumer report. *See Shaw*, 891 F.3d at 755 n.3.

Plaintiff's suggestion that "the substance of the 'included in bankruptcy' language" appears in credit reports sent to third parties is also unavailing. (ECF 109 at 13.) While Plaintiff claims that "Experian's sample Credit Profile Report indicates that the 'balance date' and 'account condition' align with information indicating when the account was included in bankruptcy" (*id.*), the balance date and account condition are distinct from the bankruptcy inclusion date, and are

separately reported on a consumer disclosure.  Indeed, the "balance date" on a consumer report corresponds to the "Date of status" field on a consumer disclosure, and the "account condition" field on a consumer report corresponds to the status of the account.  For example, on Plaintiff's consumer disclosure, Plaintiff's Military Star account reflected a date of November 2016, and the status of his account was reported as "Discharged through Bankruptcy Chapter 13."  (ECF No. 98-1, Exhibit 6, at 127.)  Tellingly, Plaintiff does not dispute the accuracy of this information.  In other words, Plaintiff does not dispute the accuracy of the "balance date" or "account condition" of his Military Star account that would have potentially been reflected on a consumer report.  Rather, Plaintiff disputes the accuracy of the information listed under the Account History section of his consumer disclosure, which stated that his debt was "included in Chapter 13 Bankruptcy on November 8, 2016."  (*Id.*)  As Experian's witness explained, however, this information—along with certain information related to how long the account would continue to report and when Experian processed the consumer's dispute—does not display on a credit report issued to a third party, but displays only on a consumer disclosure to provide consumers with additional clarity and a lay understanding of the manner in which their account is being reported.  (Cave Decl., ECF No. 98-1 at 001-5, ¶ 9.)

In short, nothing about Experian's disclosure of the Military Star "included in bankruptcy" date was confusing or misleading such that Plaintiff could not determine whether it was inaccurate.  And, because that information is not even reported to third parties, § 1681g's protections do not apply.  Accordingly, Plaintiff does not have a viable § 1681g claim against Experian, and Experian is entitled to summary judgment.

## II.   Plaintiff Cannot Establish A Violation Of § 1681e(b)

Like his § 1681g claim, Plaintiff's § 1681e(b) claim fails because the inaccurate information Plaintiff now disputes was not included in a consumer (or credit) report, and Plaintiff has otherwise failed to show that Experian's procedures were unreasonable.

### A.   The "Included In" Bankruptcy Date Is Not Sent To Third Parties

As its plain language makes clear, § 1681e(b) applies only to information in consumer reports (sent to third parties), not consumer disclosures (sent to consumers).  *Wantz v. Experian*

*Info. Sols.*, 386 F.3d 829, 833 (7th Cir. 2004) (abrogated on other grounds) (stating that "without a consumer report, there is no duty under the Act to follow reasonable procedures.").  Plaintiff does not provide any evidence that the "included in" bankruptcy language was sent to any third party in a consumer report.  Instead, he claims that his reinvestigation results constitute both a consumer disclosure and a consumer report.  But, as explained above, consumer disclosures (sent to consumers to allow consumers to evaluate the information in their file) are distinct from consumer reports (sent to third parties to assess a consumer's creditworthiness).

Moreover, Plaintiff's claim that Experian violated § 1681e(b) by sending *him* reinvestigation results that "contained the notation that Plaintiff's Military Star tradeline had been 'included' in Chapter 13 bankruptcy *after* the date of his bankruptcy discharge"—which purportedly "suggested that Plaintiff's account had been included in bankruptcy after the date of discharge"— has nothing to do with third parties or credit reports.   (ECF No. 109 at 14.)  Despite his best efforts, Plaintiff cannot escape the undisputed fact that Experian does not (and did not) send the "included in bankruptcy" date that appears on his consumer disclosures to anyone other than him.  (*See* Cave Decl., ECF No. 98-1 at 001-5, ¶ 9; Hollon Dep., ECF No. 98-1 at 079-92, 313:25-314:23.)  Accordingly, even if this information were inaccurate, it would not be a violation of § 1681e(b) because the information did not appear on a credit report issued "to third parties for certain qualifying purposes."  *Shaw*, 891 F.3d at 755 n.3; *see also* 15 U.S.C. § 1681a(d)(1); *Gillespie*, 482 F.3d at 908. [2]

---

[2] Plaintiff incorrectly claims that Experian's alleged failure to comply with the Metro 2 Format published by the Consumer Data Industry Association somehow rendered its reporting inaccurate or misleading.  (ECF No. 109 at 15-16.)  Plaintiff claims that Experian should have used the Metro 2 reporting code "H" to show that the Military Star account was discharged in bankruptcy and had been included in bankruptcy on the date of Plaintiff's bankruptcy petition.  But this Court recently held that industry guidelines such as Metro 2 Format "do not establish the standards for accuracy under the FCRA," and thus a plaintiff "cannot claim a violation of the FCRA premised upon a deviation of the Metro 2 guidelines."  *Uehara v. TD Bank, Nat'l Ass'n*, 2:17-cv-00190-GMN-CWH, 2018 WL 1472712, at *5 (D. Nev. Mar. 26, 2018) (quoting *Florence v. Cenlar Federal Savings & Loan*, No. 2:16-cv-0587-GMN-NJK, 2018 WL 1145804, at *7 (D. Nev. Mar. 1, 2018)).  Moreover, as Experian's witness explained, Experian's credit database is Metro 2 compliant and it instructs its data furnishers that they must adhere to the guidelines in the CRRG, but Experian itself is not a data furnisher and thus does not apply the guidelines to incoming data.  (Cave Decl., ECF No. 98-1 at 001-5, ¶ 14.)

1

2           **B.**     **Experian's Procedures Were Not Unreasonable**

3         Even if Plaintiff had evidence that Experian included inaccurate information on his

4 consumer report (he does not), establishing a claim under § 1681e(b) requires Plaintiff to show

5 more than some inaccuracy on a consumer report.  The FCRA does not require CRAs to maintain

6 error-free credit reports.  *See Guimond*, 45 F.3d at 1333 ("The FCRA does not impose strict

7 liability . . . an agency can escape liability if it establishes that an inaccurate report was generated

8 despite the agency's following reasonable procedures.").  Instead, the FCRA requires CRAs such

9 as Experian to maintain reasonable procedures to assure the maximum possible accuracy of

10 information contained in consumer reports.  15 U.S.C. § 1681e(b).  This section therefore "relate[s]

11 to the maintenance and operation of [a CRA's] own internal databases rather than to investigation

12 of the accuracy of information received from external sources."  *Grigoryan v. Experian Info. Sols.,*

13 *Inc.*, 84 F. Supp. 3d 1044, 1070 (C.D. Cal. 2014).  As the Ninth Circuit has made clear, "credit

14 reporting agencies are not tribunals.  They simply collect and report information furnished by

15 others." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010).  Accordingly,

16 "[i]f a consumer reporting agency accurately transcribes, stores and communicates consumer

17 information received from a source that it reasonably believes to be reputable, and which is credible

18 on its face, the agency does not violate [§ 1681e(b)] simply by reporting an item of information

19 that turns out to be inaccurate."  *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1081 (D. Or.

20 2007) (internal quotations and citations omitted).

21         A credit reporting agency acts reasonably "even if it reports inaccurate information, so long

22 as it reasonably believed the source to be reputable at the time it received the information." *Anthony*

23 *v. Experian Info. Sols., Inc.*, No. 2:14-cv-1230, 2017 WL 1198499, at *5 (E.D. Cal. Mar. 31, 2017);

24 *see also Darrin v. Bank of Am., N.A.*, No. 2:12-cv-228, 2014 WL 1922819, at *6 (E.D. Cal. May

25 14, 2014) (holding that plaintiff's § 1681e(b) claim failed because the CRA relied upon information

26 from Bank of America (the creditor), and plaintiff presented no evidence that Bank of America was

27 not a reputable source) (citing *Guimond*, 45 F.3d at 1333).  Although Plaintiff repeatedly asserts

28 that Experian's procedures in reinvestigating disputes with automated ACDVs are unreasonable,

1  his own Motion and case law confirm that a CRA must be "affirmatively on notice that information

2  received from a creditor may be suspect" for ACDV verification to be unreasonable as a matter of

3  law.  (ECF No. 109 at 17 (citing *Bradshaw v. BAC Home Loans Servicing*, 816 F. Supp. 2d 1066,

4  1073-74 (D. Or. 2011); *Grigoryan*, 84 F. Supp. 3d at 1075-76).)  Indeed, the Ninth Circuit recently

5  held that the practice of using ACDVs in the reinvestigation process is *reasonable* as a matter of

6  law, especially where, as here, the plaintiff fails to provide any evidence that the information

7  reported by the creditor is unreliable.  *Ghazaryan v. Equifax Info. Servs., LLC*, No. 17-55132, 2018

8  WL 5098835, at *1 (9th Cir. Oct. 18, 2018) (holding that CRA's use of ACDVs, "the 'automated

9  system' envisioned by the FCRA," to reinvestigate disputes was reasonable as a matter of law

10  where CRA had determined furnisher to be a reliable source and plaintiff gave CRA no reason to

11  question that determination); *see also Anthony*, 2017 WL 1198499, at *6 (holding as a matter of

12  law that Experian's exclusive reliance on the ACDV process was reasonable when plaintiff failed

13  to provide evidence that the information provided by the data furnisher was suspect).

14  Plaintiff does not even attempt to demonstrate that Experian had any reason to doubt the

15  veracity of the information provided by Military Star.  Instead, Plaintiff points to Experian's

16  systems, arguing that Experian's policies require it to reconcile bankruptcy inclusion dates "without

17  first notifying the data furnisher."  (ECF No. 109 at 19.)  But, as Experian has explained, Plaintiff's

18  dispute letter did not claim that an account was included or discharged in bankruptcy, or even

19  mention his bankruptcy at all.  (ECF No. 98-1, Exhibit 4, at 108-119.)  Thus, Experian's data quality

20  initiative was not triggered.  Moreover, even if Plaintiff had mentioned his bankruptcy, a

21  consumer's dispute of inaccurate information alone [*i.e.*, without providing supporting evidence]

22  cannot call into question a furnisher's credibility because consumers have an incentive to be

23  deceitful about their credit information."  *Anthony*, 2017 WL 1198499, at *6.  There can be no

24  dispute that Plaintiff failed to provide any such supporting documentation here.

25  Tellingly, Plaintiff cites no authority for his position that, despite his failure to mention his

26  bankruptcy in his dispute letter, Experian acted unreasonably by failing to reinvestigate the

27  bankruptcy-related information for each and every account he disputed.  Nor does Plaintiff provide

28  any support for his suggestion that Experian should also apply its "data quality initiative" to

1  information received from creditors in ACDV responses, where courts have decided that Experian

2  is entitled to rely on that information absent affirmative notice or evidence that the information is

3  unreliable.  Because Plaintiff has not provided any evidence suggesting that Military Star was

4  unreliable source, much less any evidence to show that Experian acted unreasonably in relying on

5  the information Military Star furnished, Plaintiff's § 1681(e)(b) claim must fail.  *See Carvalho*, 629

6  F.3d at 891; *Ghazaryan*, 2018 WL 5098835, at *1.

7       Unable to show that Military Star was an unreliable source, Plaintiff cherry-picks Experian

8  testimony from a separate, unrelated case his counsel filed against Experian—which bears no

9  relevance here—to suggest that Experian, not Military Star, provided the allegedly inaccurate

10  bankruptcy inclusion date.  (ECF 109 at 17-20.)  Indeed, Plaintiff uses this testimony to argue that

11  "Experian will use the date of the ACDV response as the new **balance date**."  (*Id*.  at 18 (emphasis

12  added).)  But this case is about bankruptcy inclusion dates, not account balance dates.  Indeed, the

13  record establishes that the Military Star account balance and status were reported by Military Star

14  to Experian.  (*See* Hollon Dep., ECF No. 98-1 at 079-92, 27:16-27:25.)  And, as discussed above,

15  Plaintiff does not dispute the "Status" or "Date of status" reflected on his consumer disclosure.

16       Plaintiff's final empty challenge to Experian's procedures is that Experian should have

17  reviewed publicly available bankruptcy records in reinvestigating Plaintiff's dispute.  But, again,

18  Plaintiff's argument ignores the fact that his dispute letter did not even mention his bankruptcy;

19  instead, it challenged the accuracy of the balance on the account.  In contrast, the case law Plaintiff

20  cites suggests that a failure to review publicly available bankruptcy records to determine whether a

21  consumer's bankruptcy was discharged **might** violate a **furnisher's** reinvestigation obligations.

22  (ECF No. 109 at 18 (citing *Whitlock-Allouche v. Plusfour, Inc.*, No. 2:17-cv-01656-RFB-VCF,

23  2018 WL 4258506, at *4 (D. Nev. Sept. 6, 2018) (denying summary judgment because reasonable

24  jury could find that debt collector acted unreasonably in failing to review public records and

25  discover plaintiff's bankruptcy discharge in response to an ACDV from a CRA triggered by a

26  dispute that plaintiff's debt was discharged in bankruptcy).)  The only other case Plaintiff cites held

27  that a review of public bankruptcy records would not have shown Experian that the disputed

28  accounts were discharged, and that Experian's actions in checking the accuracy with the furnisher

EXPERIAN'S REPLY TO MSJ
Case No. 2:17-cv-01408-RFB-VCF

and requesting further information from the consumer were reasonable.  (*Id*. at 19 (citing *Hannon v. Ne. Credit & Collections*, No. 2:16-cv-01814-APG-VCF, 2018 WL 577216, at *4 (D. Nev. Jan. 26, 2018), *clarified on denial of reconsideration*, 2018 WL 4355161, *appeal docketed*, No. 18-16733 (9th Cir. Sept. 13, 2018).)  Here, Plaintiff's Military Star account was already reporting as included in bankruptcy, and Plaintiff's dispute did not claim that the account should be reporting as discharged in bankruptcy.  Moreover, the Ninth Circuit has held that a CRA "is not required as part of its reinvestigation duties to provide a legal opinion on the merits," because "the creditor or furnisher . . . stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation." *Carvalho*, 629 F.3d at 892.

For these reasons, Plaintiff is unable to establish any inaccurate information on an Experian consumer report sent to a third party, or any unreasonable failure of Experian's credit reporting procedures.  Because these are essential elements of proof for a § 1681e(b) claim, Experian is entitled to summary judgment.

## III.   Plaintiff Cannot Establish A Violation Of § 1681i

As shown, Plaintiff's § 1681i claim also fails as a matter of law, as the undisputed evidence shows that Experian conducted a reasonable reinvestigation of Plaintiff's dispute.  To prevail on his § 1681i(a) "reasonable reinvestigation" claim, Plaintiff must produce admissible evidence establishing: (1) that his credit file contained inaccurate information and he notified Experian directly of the inaccurate information; (2) that Experian failed to respond to or to conduct a reasonable reinvestigation of his dispute; and (3) that Experian's failure caused him harm. *See, e.g.*, *Carvalho v. Equifax Info. Servs., Inc.*, 588 F. Supp. 2d 1089, 1095 (N.D. Cal. 2008), *aff'd*, 629 F.3d 876 (9th Cir. 2010); *Saenz*, 621 F. Supp. 2d at 1082.  Section 1681i, like § 1681e(b), does not require a perfect reinvestigation, but only a reasonable one.  When a consumer submits a dispute to a CRA, the CRA satisfies its reinvestigation obligations by contacting the creditor reporting the account, informing it of the consumer's dispute, including relevant information provided by the consumer, and requesting that the creditor verify the information. *See Ghazaryan*, 2018 WL 5098835, at *1.  Indeed, the Ninth Circuit has recognized that "the CRA's 'reasonable

1  reinvestigation' consists largely of triggering the investigation by the furnisher." *Gorman v.*
2  *Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009).

3        Importantly, CRAs have no duty to reinvestigate credit information under § 1681i until the
4  consumer notifies them of the alleged inaccuracy.  *See Casella v. Equifax Credit Info. Servs.*, 56
5  F.3d 469, 474 (2d Cir. 1995) ("Prior to being notified by a consumer, a credit reporting agency
6  generally has no duty to reinvestigate credit information."); *Johnson v. Wells Fargo Home Mortg.,*
7  *Inc.*, 558 F. Supp. 2d 1114, 1135–36 (D. Nev. 2008) (explaining that "no violation" of the duty to
8  properly reinvestigate "can occur until after the 30-day deadline for completing a proper
9  reinvestigation has expired").  As discussed, however, Plaintiff's dispute makes no mention of
10  Plaintiff's bankruptcy, or that Plaintiff believed that the Military Star account should report as
11  discharged in bankruptcy.  (ECF No. 98-1 at 112-23.)  Instead, Plaintiff disputed only the balance
12  the account balance and the status of "written off."  (*Id.*)  In response, Experian addressed each of
13  those issues and changed the Military Star account balance to $0 and the status from "written off"
14  to "discharged through Bankruptcy Chapter 13."  (ECF No. 98-1 at 131.)  Experian sent Plaintiff
15  the results of the reinvestigation, which provided several options for Plaintiff if he still questioned
16  information on his consumer disclosure.  (*Id.* at 128; Cave Decl., ECF No. 98-1 at 001-5, ¶ 15.)
17  Plaintiff never contacted Experian again, not even to indicate his new disagreement with the
18  updated Military Star reporting.  (Cave Decl., ECF No. 98-1 at 001-5, ¶ 16; D. Leoni Dep., ECF
19  No. 98-1 at 135-55, 129:23-130:14.)  Nor did he ever follow any of the suggestions Experian
20  provided him in the event that he disagreed with information in his credit file.  (D. Leoni Dep., ECF
21  No. 98-1 at 135-55, 133:3-135:21.)  Thus, because Plaintiff never disputed (or even mentioned) his
22  bankruptcy, Experian had no reason to reinvestigate that information.

23        Finally, the appearance of an allegedly inaccurate bankruptcy inclusion date on Plaintiff's
24  consumer disclosure does not make Experian's reinvestigation unreasonable.  Indeed, § 1681i "does
25  not impose strict liability on a credit reporting agency," *Acton v. Bank One Corp.*, 293 F. Supp. 2d
26  1092, 1099 (D. Ariz. 2003), and the fact that Plaintiff's consumer disclosure contained a single
27  inaccuracy, by itself, does not render Experian's reinvestigation unreasonable.  *See Ghazaryan*,
28  2018 WL 5098835, at *1 (recognizing that CRAs are entitled to rely on information provided by a

1  furnisher "notwithstanding that this information [may] ultimately [be] proved to be inaccurate");

2  *see also Thomas v. Trans Union, LLC*, 197 F. Supp. 2d 1233, 1237 (D. Or. 2002) (explaining that

3  a CRA "should not be liable under FCRA for an employee's isolated mistakes in the face of the

4  agency having and enforcing reasonable procedures to fulfill its FCRA obligations").

5      After receiving Plaintiff's dispute, Experian contacted Military Star and updated Plaintiff's

6  consumer report based on the information it received.  Plaintiff cannot show that this process was

7  inconsistent with Experian's reasonable reinvestigation duties under the FCRA.   Therefore,

8  Experian is entitled to summary judgment on this claim.

9  **IV.    Plaintiff Cannot Establish That Experian Willfully Violated The FCRA**

10      As Experian has demonstrated, Plaintiff's willfulness claim also fails as a matter of law.

11  Willful misconduct under the FCRA encompasses both intentional and reckless violations of the

12  law.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59 (2007).  Thus, for a willful violation to

13  have occurred, Plaintiff must prove that Experian intentionally harmed him, or that Experian's

14  procedures were so objectively unreasonable that they were in reckless disregard of its statutory

15  obligations.  *Id*. at 69-70.  Where a CRA's actions have "a foundation in the statutory text . . . and

16  a sufficiently convincing justification," they are not objectively unreasonable, let alone reckless,

17  even if the court disagrees with the justification."  *Id*. at 69-70.  Thus, a CRA violates the FCRA

18  willfully only where its acts are established as unlawful by either "pellucid" statutory text or

19  "guidance from the courts of appeal or the [FTC] . . . that might have warned it away from the view

20  it took."  *Id.* at 70.  The absence of willfulness can be resolved as a matter of law.  *Id*. at 71 (holding,

21  as a matter of law, that the defendant did not recklessly violate the FCRA); *see also Banga v.*

22  *Experian Info. Sols., Inc*., No. 09-cv-04867, 2013 WL 5539690, at *12 (N.D. Cal. Sept. 30, 2013)

23  (granting summary judgment in favor of Experian).  But, as Plaintiff concedes, the existence of

24  willfulness is "generally a question of fact for the jury."  (ECF No. 109 at 23 (citing *Taylor v. First*

25  *Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095, 1110 (N.D. Cal. 2016).)

26      To support his willfulness claims, Plaintiff cobbles together a mishmash of "evidence"

27  regarding the numerosity of his purported class, his expert's opinions as to the reasonableness of

28  Experian's ACDV procedures, testimony from Experian witnesses in other, unrelated cases, and

credit reporting guidelines.  (ECF No. 109 at 23-24.)  Plaintiff, however, offers no specific evidence that Experian acted either intentionally or recklessly when it prepared his consumer disclosures or conducted the single reinvestigation he requested.  (*See, e.g.*, D. Leoni Dep., ECF No. 98-1 at 135-55, 185:25-186:11 (Q: What's the basis for your allegations that Experian acted willfully in this case?  A: I can't answer that one.  I don't know what to say on that one.")  Indeed, as Experian has shown, there is no evidence that Experian failed to do anything required under the FCRA, much less that it did so in the face of an "unjustifiably high risk of harm" to Plaintiff.

## V.  Plaintiff Cannot Establish That Experian Caused Any Cognizable Damages

Even if Plaintiff could prove the required elements of any of his claims, he cannot recover under a theory of negligence unless he can also show that he sustained actual damages as a result of Experian's alleged conduct.  *See* 15 U.S.C. § 1681o; *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages."); *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) ("[F]ailure to produce evidence of damage resulting from a[n] FCRA violation mandates summary judgment.").  As Experian has shown, Plaintiff has utterly failed to substantiate any of his alleged damages.

First, although Plaintiff claimed during discovery that he suffered credit denials, he has produced no evidence to show any adverse credit decisions that are directly attributable to any Experian credit report, much less attributable to the alleged inaccurate disclosure *to Plaintiff* of his Military Star account.  In fact, Plaintiff has seemingly abandoned his claim for damages related to credit denials, as he now argues that credit denials are "not a prerequisite of FCRA liability."  (ECF No. 109 at 26.)

Second, Plaintiff cannot show that Experian's conduct caused him emotional harm. Although Plaintiff's discovery responses claim that he suffered "stress" and "avoided applying for a car loan for fear of being denied," he did not corroborate these claims.  (ECF No. 98-1, Exhibit 8, at 174, Response No. 14.)  To the contrary, during his deposition, Plaintiff could not articulate any emotional distress he suffered, but instead testified that he was "a strong guy" who slept "well." (D. Leoni Dep., ECF No. 98-1 at 135-55, 159:22-160:24.)  Similarly, Plaintiff's wife, who Plaintiff

disclosed as a witness with knowledge of his claims, could not identify any emotional distress that Plaintiff suffered as a result of Experian's reporting.  (Deposition of Myong Hui Leoni ("M. Leoni Dep."), ECF No. 98-1 at 194-205, 100:6-21.)  Without "something more" than Plaintiff's own conclusory and self-serving testimony, Plaintiff cannot establish that he suffered emotional distress. *See Myers v. Bennett Law Offices*, 238 F. Supp. 2d 1196, 1206 (D. Nev. 2002) (recognizing that "a plaintiff must support a claim of damages based on emotional distress with something more than his or her own conclusory allegations" to survive summary judgment").[3]

Finally, Plaintiff has presented no evidence that Experian's reporting caused him to incur out-of-pocket expenses.  Indeed, Plaintiff has produced no documents that support any of these claimed expenses, and he fails to connect these purported costs to Experian's allegedly inaccurate reporting of the Military Star account.  In fact, Plaintiff has admitted that he has no evidence of postage or mailing costs that he had paid, and that his only costs relate to transportation and "lost time" in traveling to and from his attorney's offices.  (D. Leoni Dep., ECF No. 98-1 at 135-55, 149:25-154:24.)  But out-of-pocket pre-litigation costs are not a cognizable item of actual damage under the FCRA.  *See Campbell v. Experian Info. Sols., Inc.*, No. 08-cv-4217, 2009 WL 3834125, at *7 (W.D. Mo. Nov. 13, 2009); *see also Reed v. Experian Info. Sols., Inc.*, 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004) ("[p]re-litigation attorneys' fees are not the sort of harm contemplated by the statute"); *Eller v. Experian Info. Sols., Inc.*, No. 09-cv-00040, 2011 WL 3365955, at *12, *34-35 (D. Colo. May 17, 2011) ("expenses incurred merely to notify [a consumer reporting agency] of inaccurate credit information cannot be compensable as 'actual damages'"); *Jordan v. Equifax Info. Servs.*, 410 F. Supp. 2d 1349, 1356 n.8 (N.D. Ga. 2006) (denying recovery of "the cost of postage and sending faxes [that] were incurred in order to notify Defendants of inaccurate credit information").  Plaintiff also alludes to the opinions of his purported class damages expert, Stan Smith, claiming that his out-of-pocket damages "can be quantified through Dr. Smith's damages

---

[3] Moreover, as Experian demonstrated in its opening brief and its opposition to Plaintiff's motion for summary judgment (ECF Nos. 98, 110), Plaintiff cannot reasonably show that his emotional distress is attributable to Plaintiff's single dispute letter and his relatively minor quibbles with Experian's reporting of one account. *See Casella*, 56 F.3d at 474 ("[Plaintiff] was not entitled to pain and suffering damages in his case, because he failed to show that his emotional distress was caused by [the CRA], as opposed to [the creditor].").

1  model."  (ECF No. 109 at 27.)   But Plaintiff himself admits that "Dr. Smith's calculation is

2  restricted to Plaintiff's class claim," (ECF No. 90 at 12 n.67), and Dr. Smith's own report concedes

3  that his opinions consist of assessments of the typicality of class-wide damages and the possibility

4  of an aggregate or standardized damages model for the class, not an assessment of whether Plaintiff

5  himself sustained actual damages.  (ECF No. 90-22 at 3.)

6      For all of these reasons, Plaintiff cannot establish any damages whatsoever because of

7  Experian's allegedly inaccurate reporting of the Military Star account, and thus his negligence

8  claims cannot survive summary judgment.

9  **VI.    Plaintiff's Rule 56(d) Request Should Be Denied**

10      In a last-ditch effort to save his failing claims, Plaintiff invokes Federal Rule of Civil

11  Procedure 56(d), distorting Experian's internal document produced in an entirely separate case to

12  falsely claim that the document "will tend to show that Experian itself, among other things,

13  equivocates between a 'consumer disclosure' and a 'consumer report.'"  (ECF No. 109 at 29

14  (referencing *Zimmerman v. Experian Information Solutions*, No. 2:18-cv-00015-APG-NJK (D.

15  Nev.).)   But Rule 56(d) is not an escape hatch for plaintiffs faced with summary judgment on

16  legally unsound claims.   Rather, the Rule permits the Court to, among other things, delay

17  considering a motion for summary judgment if the "nonmovant shows by affidavit or declaration

18  that, for specified reasons, it cannot present *facts* essential to justify its opposition."  Fed. R. Civ.

19  P. 56(d) (emphasis added).  "The requesting party must show: (1) it has set forth in affidavit form

20  the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the

21  sought-after facts are essential to oppose summary judgment."  *Family Home & Fin. Ctr., Inc. v.

22  Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citations omitted).

23      The basis of Plaintiff's half-hearted Rule 56(d) request is not that he needs more time to

24  discover some essential *fact*.  Instead, Plaintiff distorts an internal FCRA Policy document to try to

25  convince the Court of his *legal* position that consumer reports and consumer disclosures are one

26  and the same.[4]  But, regardless of what the FCRA Policy says about that distinction, as Experian

---

[4] Despite Plaintiff's suggestion that Experian concealed the FCRA Policy document,
Experian did nothing of the sort.  Instead, it produced documents sufficient to show its policies and
procedures relevant to this case (as the parties agreed), and Plaintiff never moved to compel any
further production of such documents. In any event, to avoid unnecessary motion practice and in

explained above, consumer reports are distinct from consumer disclosures as a matter of law, and courts expressly caution against conflating the two documents.  (*See supra* at I.B.)  In any event, the FCRA Policy document in no way equivocates between consumer disclosures and consumer reports.  To the contrary, the FCRA Policy expressly addresses the contents of these two documents in separate sections, and merely restates the requirements of the FCRA.  (*See* Ball Decl. Ex. A at 3, 6.)  Nothing about the FCRA policy document saves Plaintiff's claims.

As Experian explained in *Zimmerman*, Plaintiff cites to a single page to support his erroneous assertion that Experian "equivocates" between consumer disclosures and consumer reports.  *See Zimmerman*, No. 2:18-cv-00015, ECF No. 90 at 12.  Plaintiff, however, conspicuously fails to mention the page of the FCRA Policy that concerns consumer disclosures.  (*See* Ball Decl. Ex. A at 6.)  Rather, the page Plaintiff cites outlines the contents of consumer reports, and merely recites what is required to be disclosed, and what is prohibited from being disclosed, on a consumer report. (*See id.* at 3.) Nowhere does Experian equivocate between consumer reports and consumer disclosures.  To the contrary, the only reference to a consumer disclosure on that page concerns soft credit inquiries.  Specifically, the FCRA Policy states that "[i]nquiries related to credit or insurance transactions that are not initiated by the consumer (e.g., Prescreen)" are prohibited from being disclosed on a consumer report, but such inquiries may be disclosed "on consumer file disclosures available to and viewable by the consumer." (*Id.*)  Unremarkably, this statement simply restates the FCRA's requirement that soft credit inquiries—*i.e.*, inquiries not directly initiated by the consumer—do not appear on consumer reports.  *See*, *e.g.*, *Heaton v. Soc. Fin., Inc.*, No. 14-cv-05191, 2015 WL 6744525, at *2 (N.D. Cal. Nov. 4, 2015) ("A 'soft' inquiry does not appear on a consumer's credit report and does not affect his/her credit score. Conversely, a 'hard' inquiry does appear on a credit report, and may negatively affect a consumer's credit score, especially if many hard inquiries are performed within a short period of time."); *Banga*, 2013 WL 5539690, at *2 (recognizing that a "'hard inquiry' is displayed as part of a consumer's credit report when 'the report is requested by a third-party, and is generally the result of action initiated by the consumer

the spirit of compromise, Experian has agreed to allow Plaintiff to use the FCRA Policy document for the limited purpose of his summary judgment reply.  Experian likewise attaches the FCRA Policy to this Motion for the Court's review.  (*See* Ball Decl., Ex. A.)

1   or for other permissible purposes,'" whereas a "'soft inquiry' is an inquiry that appears only to the

2   consumer when the consumer requests a copy of their credit file from Experian, and 'is generally

3   the result of when a third party [accesses] a consumer's credit file for a permissible purpose which

4   is not directly initiated by the consumer'").  And, of course, it is entirely consistent with the fact

5   that consumer disclosures are distinct from consumer reports, are used for different purposes, and

6   may contain additional information.

7         Furthermore, Plaintiff's Rule 56(d) request would effectively reopen discovery. But the

8   deadline for discovery has long since passed, and Magistrate Judge Ferenbach expressly rejected

9   Plaintiff's request to extend discovery based on Plaintiff's failure to diligently prosecute this case.

10  (*See* ECF No. 48, Tr. at 28:17-18, 29:24-25, 37:4-20.)   If Plaintiff believed Experian's prior

11  document productions were insufficient (they were not), then he should have moved to compel

12  further production.  But Plaintiff did nothing, and he should not now be permitted to use Rule 56(d)

13  to excuse his dilatory conduct.  *See Family Home*, 525 F.3d at 827 (affirming denial of Rule 56(f)

14  (now Rule 56(d)) motion and noting that "even if [the opposing party] had satisfied the Rule 56(f)

15  requirements, it was not entitled to additional discovery because it failed to file timely motions to

16  compel and extend discovery"); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir.

17  1996) (finding that "the district court does not abuse its discretion by denying further discovery if

18  the movant has failed diligently to pursue discovery in the past.") (citations and quotation marks

19  omitted).

20                                    **<u>CONCLUSION</u>**

21         For the reasons set forth above, Experian respectfully requests that this Court deny

22  Plaintiff's Motion for Summary Judgment.

23  DATED this 13th day of December, 2018.    NAYLOR & BRASTER

24                                By:    */s/ Jennifer L. Braster*
                                         Jennifer L. Braster
25                                       Nevada Bar No. 9982
                                         jbraster@naylorandbrasterlaw.com
26                                       1050 Indigo Drive, Suite 200
                                         Las Vegas, NV 89145
27

28                                       *Attorneys for Defendant Experian*
                                         *Information Solutions, Inc.*

                                         EXPERIAN'S REPLY TO MSJ
                                         Case No. 2:17-cv-01408-RFB-VCF
- 20 -

1

## **CERTIFICATE OF SERVICE**

2

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee

3

of NAYLOR & BRASTER and that on this <u>13th</u> day of December 2018, I caused the document

4

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY IN FURTHER**

5

**SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be served through the

6

Court's CM/ECF system addressed to (and the sealed Exhibit A served directly via email):

7

8

| | |
|---|---|
| Matthew I. Knepper<br>Miles N. Clark<br>Knepper & Clark, LLC<br>10040 W. Cheyenne Ave. Suite 170-109<br>Las Vegas, NV 89129<br>702-825-6060<br>Fax: 702-447-8048<br>Email:<br>matthew.knepper@knepperclark.com<br>miles.clark@knepperclark.com<br>*Attorneys for Plaintiff* | Sean N. Payne<br>PAYNE LAW FIRM LLC<br>9550 S. Eastern Ave. Suite 253-A213<br>Las Vegas, NV 89123<br>702-952-2733<br>Fax: 702-462-7227<br>Email: seanpayne@spaynelaw.com<br>*Attorneys for Plaintiff* |
| David H. Krieger<br>Haines & Krieger, LLC<br>8985 S. Eastern Avenue<br>Suite 350<br>Henderson, NV 89123<br>(702) 880-5554<br>Fax: (702) 383-5518<br>Email: dkrieger@hainesandkrieger.com<br>*Attorneys for Plaintiff* | |

9

10

11

12

13

14

15

16

17

18

19

20

21

/s/ Jennifer Braster

22

An Employee of NAYLOR & BRASTER

23

24

25

26

27

28

EXPERIAN'S REPLY TO MSJ
Case No. 2:17-cv-01408-RFB-VCF